Filed 4/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G052105 |
| v. | (Super. Ct. No. 99CF1472) |
| JOHN JEFFREY VALDEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Gregg L. Prickett, Judge. Reversed and remanded.

Jamie Popper, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Christen Somerville, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

John Jeffrey Valdez appeals from an order denying his petition for recall of his indeterminate life sentence and resentencing in accordance with the Three Strikes Reform Act, commonly referred to as Proposition 36. Although the trial court determined appellant was eligible for resentencing, it denied his petition based on a discretionary determination that "resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (f); all further undesignated statutory references are to this code.) Appellant argues the court erred because: (1) Proposition 36 establishes a presumption *in favor* of resentencing eligible inmates, and authorizes denial of a resentencing petition on the basis of dangerousness only in extraordinary circumstances; (2) the definition of what constitutes "an unreasonable risk of danger to public safety" that was adopted by the electorate in the Safe Neighborhoods and Schools Act – commonly referred to as Proposition 47 – must also be applied to resentencing petitions filed pursuant to Proposition 36; (3) if the Proposition 47 definition is not applied, then the "unreasonable risk of danger to public safety" standard used in Proposition 36 must be deemed void for vagueness. Appellant also contends he was entitled to a jury trial on the issue of his dangerousness and that the factual findings underlying the court's determination he posed an unreasonable risk of danger to public safety were unsupported by substantial evidence.

The Attorney General counters by asserting the trial court erred when it denied the prosecution's earlier motion to dismiss the petition on the basis appellant was *ineligible* for resentencing relief. Specifically, the Attorney General claims the evidence demonstrated appellant was ineligible to be resentenced because he was armed during the commission of his current offense of heroin possession. We conclude that issue cannot be raised for the first time on appeal from the trial court's subsequent ruling that resentencing should be denied on the basis appellant poses an unreasonable risk of danger to public safety.

As to that subsequent order, we agree with appellant's contention that the more specific definition of "an unreasonable risk of danger to public safety" contained in Proposition 47 is the appropriate standard to apply to resentencing petitions under Proposition 36.  Section 1170.18, subdivision (c), adopted as part of Proposition 47, plainly states that its definition of "'unreasonable risk of danger to public safety'" applies "throughout this Code."  Moreover, applying that standard to Proposition 36 petitions is in no way inconsistent with either the language or purpose of Proposition 36.  To the contrary, prohibiting resentencing for only those inmates who pose an unreasonable risk of committing *the types of offenses which currently justify an indeterminate life term under Proposition 36* is entirely consistent with the goals of Proposition 36.

Having concluded the appropriate standard for assessing appellant's dangerousness is the one found in Proposition 47, we reverse the judgment and remand the case to the trial court with directions to reconsider the issue in accordance with that standard.  We reject appellant's contention that he is entitled to a jury trial on the issue.

FACTS

In October 1999, appellant was charged with one count of possession of a controlled substance (heroin) and one count of possessing a firearm by a felon.  He had a lengthy prior record, stemming back to when he was a juvenile.  As this court previously characterized it:  "[Appellant's] extensive criminal history started as a 12-year old and continued when he reached adulthood.  In 1975, he was sentenced to state prison for a residential burglary; in 1977, he sustained a parole violation when he committed another burglary; in 1978, another parole violation for use of a controlled substance; in 1979, robbery at gunpoint; the next year, another robbery resulted in his serving 7 years of a 10-year sentence.  [Appellant] had been out on parole for about one year when he was returned to prison because of narcotics offenses; while incarcerated, he committed a

3

battery on a guard. Shortly thereafter, he pleaded guilty to auto theft and possession of narcotics paraphernalia and served one year in custody. A 1992 conviction resulted from his being under the influence of a controlled substance. Further convictions were for his being a felon in possession of a firearm (1994) and possession of narcotics paraphernalia (1996 and 1998). In short, [appellant] could serve as the poster boy for the 'Three Strikes' law." (*People v. Valdez* (Sept. 17, 2002, G028006) [nonpub.opn.].)

In September 2000, appellant was sentenced to a term of 25 years to life in prison on the current drug and weapons possession charges.

While in prison, appellant was found in possession of heroin and syringes in 2001 and 2004, respectively. In 2006, he was twice convicted of being in possession of a weapon, and he was again found in possession of a weapon in 2008. However, there was no evidence he had ever used any weapon or otherwise been violent while in prison. As late as 2006, when appellant was transferred to a new prison, he admitted being a "Sureno," and specifically to membership in "an Orange County Street Gang called Santa Nita." But while there was evidence appellant had associated with gang members while in prison, there was no evidence he had ever associated with Santa Nita members. There was no evidence he had participated in gang activity while in prison.

In May 2013, appellant petitioned for resentencing in accordance with Proposition 36. The prosecutor responded with a motion to dismiss the petition on the ground appellant was ineligible for resentencing relief under subdivision (e)(ii) of section 1170.126 because he was "armed" with the firearm he possessed during his crime of possessing the heroin.

The trial court (per Judge William F. Froeberg, who imposed the original sentence) rejected this argument in November 2013, and found appellant was eligible for resentencing. In September 2014, just before Judge Froeberg retired, the prosecutor asked him to reconsider his prior eligibility ruling in light of new case law bearing on the issue, and find appellant ineligible for resentencing. Judge Froeberg considered the

4

additional case law, but concluded it did not warrant any change in the court's eligibility ruling. The prosecutor did not challenge either of those adverse eligibility rulings in this court and the case was thereafter set for a hearing before a different judge to address the second prong of the Proposition 36 resentencing analysis, i.e., whether resentencing appellant would "pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

At the hearing, the prosecutor relied on evidence of appellant's criminal history, drug and weapons activity in prison, a report by the California Department of Corrections and Rehabilitation on the recidivism rates of inmates released from prison, and the testimony of a gang expert. The expert opined, based on appellant's tattoos, the fact he had identified himself to prison officials as a Santa Nita gang member and the lack of any evidence he had formally disassociated from that gang, that he was likely a "veterano" of the Santa Nita gang, and thus would reassociate with the gang if released from prison. The expert also stated that a veterano of the Santa Nita gang "may" have a role as a leader and exercise influence within the gang. The expert acknowledged, however, that he was aware of no evidence appellant had ever tried to communicate with Santa Nita gang members outside of prison during his 15 years of incarceration, or had participated in gang activities during that period.

Appellant's argument was essentially that, at age 60, his criminal days were over. He claimed his criminal history had largely been inspired by his drug addiction, and while his drug use had continued for a period after his incarceration, he had been drug-free for over a decade. Random drug tests during appellant's incarceration supported that assertion. His disciplinary record in prison was also remote in time, and he had no involvement with prison gang activity. Most significantly, appellant introduced evidence that he was suffering from various ailments, including end-stage liver disease, chronic Hepatitis C, liver cancer, and cirrhosis. In early 2015, appellant was transferred to the California Medical Facility where he is being treated. His

5

remaining lifespan was estimated by a medical expert to be anywhere from six months to a year and a half if he maintained his treatment regimen, and would likely be a mere two months if he did not. A forensic psychologist who evaluated appellant also testified, and estimated he had a 1.9 percent chance of reoffending, based on factors such as his age, his remorse for his criminal past, his cessation of drug use, his sincere desire to turn his life around in the short time he has left, and his appreciation of his own mortality.

Appellant also offered evidence of strong family support, including financially well-off siblings who could provide him with a place to live outside of Santa Ana, the territory of the Santa Nita gang. Appellant's sister, who lived in Encino but was in the process of moving to Connecticut, stated appellant would live with her if released from prison, and she would ensure he continues his treatment, keeps his appointments, and does not possess any weapons.

In denying the petition, the trial court explained it viewed the statute as requiring an evaluation of four factors to determine whether a petitioner poses an unreasonable risk of danger: "Factor one is his criminal history, including by statute the types of crimes, the extent of injury to the victims, the length of prior prison commitments, the remoteness of his crimes. [¶] Next, his disciplinary record. [¶] Next, contained within that same subsection 2 is his record of rehabilitation while incarcerated. To me, those are totally different factors, so that's why I separate them. [¶] Then last, the catchall section of any other evidence the court deems appropriate." The court noted that appellant's criminal history, commencing at age 12, suggested he was likely to reoffend, and that his time in prison included two incidents of weapons possession within a month of each other in 2006, and possession of heroin and syringes. Balanced against those negatives, however, was what the court characterized as "the crux of the issue," which was "the defendant's health." The evidence that appellant was seriously ill with end-stage liver disease and the likelihood he would succumb to his liver diseases within 5 years (although the undisputed expert medical opinion, given the array of defendant's

6

ailments, was that he would succumb within 18 months.)  Then, after noting that appellant was first diagnosed with liver disease (the original hepatitis diagnoses) more than 15 years earlier, and had "continued to engage in criminal activities" after that initial diagnosis, the court found "defendant would pose a danger" if resentenced to a lower term.  The court did not specify what danger appellant posed, how significant it was, what types of crimes he was considered likely to commit, or by what measure he would qualify as posing an *unreasonable* risk to public safety.

DISCUSSION

1.  *The Underlying Law*

> *1.1 Proposition 36 resentencing law*

Section 1170.126 was enacted by voter initiative as part of the Three Strikes Reform Act, commonly referred to as "Proposition 36."  (Voter Information Guide, Gen Elec. (Nov. 6, 2012) text of Prop. 36, § 6, p. 109.)  The primary goal of Proposition 36, as explained to voters, was to "[r]estore the Three Strikes law [sections 667 and 1170.12] to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime" and to "[m]aintain that repeat offenders convicted of non-violent, non-serious crimes like shoplifting and simple drug possession will receive twice the normal sentence instead of a life sentence."  (*Id.* § 1, p. 105.)  Specifically, Proposition 36 altered the Three Strikes sentencing scheme so that a recidivist felon would no longer be sentenced to an indeterminate life term for a third strike felony that was not defined as serious or violent, unless at least one other condition was pleaded and proved.  Those other conditions included:  (1) the current felony was a controlled substance charge involving large amounts of drugs; (2) the current felony was a specified type of sex offense; (3) the current felony involved the use of a firearm, was committed while armed, was intended to

7

cause great bodily injury; or (4) a prior felony was especially egregious, such as murder, forcible sex offenses, sexual abuse of a child under 14, or any other felony punishable by life in prison or death.  (§ 667, subd. (e)(2)(C)(i-iv).)

In accordance with the electorate's rejection of life sentences for most non-serious and non-violent third strike felonies, Proposition 36 also includes a provision, section 1170.126, that allows inmates who were *previously* sentenced to life terms under an earlier version of the "Three Strikes" law to petition for recall of their sentences and resentencing to the term that would have been imposed for their crime under the new sentencing provisions.  Thus, the statute governing these petitions states it is intended to apply to those "persons presently serving an indeterminate term of imprisonment . . . *whose sentence under this act would not have been an indeterminate life sentence.*" (§ 1170.126, subd. (a), italics added.)  And it specifies that the relief to be obtained through a successful petition is "resentencing in accordance with the provisions of subdivision (e) of Section 667, and subdivision (c) of section 1170.12, as those statutes have been amended by the act that added this section."  (§ 1170.126, subd. (b).)

Hence, the initial inquiry under the resentencing provision is whether an inmate who is currently serving an indeterminate life sentence under the Three Strikes law is "eligible" for resentencing – i.e., whether his or her crimes would have qualified for shorter prison sentence under the revised sentencing provisions of Proposition 36. And subdivision (e) of section 1170.126 defines eligibility in terms that mirror those new third strike sentencing provisions:  (1) if an inmate's third strike felony was neither serious nor violent; (2) was not a controlled substance charge involving large amounts of drugs; (3) was not a specified type of sex offense; (4) did not involve the use of a firearm; (5) was not committed while armed or with intent to cause great bodily injury; and (6) if the felon has no prior convictions for one of the especially egregious felonies, he or she is eligible to be resentenced to the term called for under the new law.

And if the inmate meets these basic eligibility requirements, the statute states he or she "shall be" resentenced in accordance with section 667, subdivision (e)(1), and section 1170.12, subdivision (c)(1) – i.e., to twice the term otherwise provided as punishment for the current felony – "unless the court, *in its discretion*, determines that resentencing the petitioner would pose an *unreasonable risk* of danger to public safety." (§ 1170.126, subd. (f), italics added.) While section 1170.126 allows the court to consider an inmate's criminal history and conduct while incarcerated as part of its assessment of whether resentencing the inmate would pose an unreasonable risk of danger to public safety, it also invites the court to consider "[a]ny other evidence the court, within its discretion, determines to be relevant" in making that determination. (§ 1170,126, subd. (g)(3).) Other than suggesting a link between a petitioner's prior history and his or her present dangerousness, the statute does not offer any guidance as to the meaning of that "unreasonable risk of danger" standard. Nonetheless, whether an *eligible* inmate actually *obtains* resentencing relief will depend entirely upon the trial court's discretionary assessment of whether the inmate meets that ill defined standard.

### 1.2 Proposition 47 resentencing law

In November 2014, the voters passed the Safe Neighborhoods and Schools Act (Vote Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 14, p. 73), designed to reduce the punishment for certain drug- and theft-related offenses by designating them as misdemeanors. Similar to Proposition 36, Proposition 47 creates a postconviction procedure that allows an inmate to petition for resentencing if he or she is "currently serving" a felony sentence for a crime Proposition 47 now designates as a misdemeanor. (§ 1170.18, subd. (a).) If the petitioner satisfies Proposition 47' eligibility requirements, "the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . *unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety*."

9

(§ 1170.18, subd. (b), italics added.)  Thus, Proposition 47 articulates the same standard as Proposition 36 for determining whether a person should be resentenced.  Moreover, Proposition 47 identifies the same categories of evidence as Proposition 36 for the trial court to consider in making that determination – the inmate's criminal history, his or her conduct while incarcerated, and "[a]ny other evidence the court, within its discretion, determines to be relevant."  (Compare §§ 1170.18, subd. (b)(3), 1170.126, subd. (g)(3).)

Unlike Proposition 36, however, Proposition 47 does define the phrase "unreasonable risk of danger to public safety."  Specifically, section 1170.18, subdivision (c), states, "*As used throughout this Code*, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."  (§ 1170.18, subd. (c), italics added.)  The "new violent felon[ies]" identified in this statute are the same egregious felonies that, if previously committed by a third strike felon, would render him or her ineligible for resentencing relief under Proposition 36, no matter how relatively innocuous the current felony.  (Compare §§ 1170.18, subd. (c), 1170.126, subd. (e)(3).)


2. *Eligibility for Resentencing*

We first address the Attorney General's claim that the trial court's denial of the resentencing petition should be upheld on the basis the court previously erred when it rejected the prosecutor's motion to dismiss on the ground appellant was ineligible for resentencing.  Specifically, the Attorney General argues the evidence before the trial court demonstrated appellant was ineligible under section 1170.126, subdivision (e)(2), because he was armed with a firearm during his commission of his current offense.

However, as appellant points out, the trial court made that eligibility determination when it denied the motion to dismiss at a hearing in November 2013, and then confirmed it in September 2014 after the prosecution sought reconsideration.  As

10

explained in *People v. Superior Court (Martinez)* (2014) 225 Cal.App.4th 979, if the Attorney General wished to challenge that eligibility finding in this court, the proper remedy was to file a petition for writ of mandate. (*Id.* at p. 988; *People v. Superior Court (Cervantes)* (2014) 225 Cal.App.4th 1007, 1011 [acknowledging prosecutor properly challenged the trial court's eligibility determination by writ petition, prior to the resentencing hearing].) Such a writ petition constituted a plain, speedy and adequate remedy to challenge that ruling, and consequently the failure to pursue it constitutes a waiver of that challenge. (*People v. Fond* (1999) 71 Cal.App.4th 127, 133-134 [prosecution waived its right to challenge an allegedly inadequate sentence by failing to file its own appeal].)

But, even if not waived, the challenge is unpersuasive. In asking the court to find defendant was armed, the prosecution was asking the court to make an affirmative factual finding, i.e., that gun defendant was found to have possessed was *readily accessible* to him during his commission of the crimes for which he was sentenced. As our Supreme Court has explained, "'[i]t is the availability – *the ready access* – of the weapon that constitutes arming.'" (*People v. Bland* (1995) 10 Cal.4th 991, 997, italics added.) However, as the trial court repeatedly emphasized in refusing to make that determination, defendant was arrested inside his home, and the firearm he was found to have possessed was located in a car he shared with his wife parked outside the home. The trial court also noted, "There was no indication as to how long the firearm had been in his vehicle, who put it there, how it got there. It was just a firearm in his vehicle. That is sufficient to [support an] exercise of dominion or control. In my way of thinking that does not rise to the level of being armed." In short, the trial court concluded there were too many gaps in the evidence for it to be convinced defendant's constructive possession of the gun found in his car rose to the level of arming.

In reviewing this decision, we are bound by the usual rules, including the requirement that we "'must view the evidence in a light most favorable to [the judgment]

11

and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Thus, in order to reverse, we would have to conclude that the evidence before the trial court so compellingly demonstrated the gun was readily accessible to defendant during the commission of his crimes that no reasonable trial judge could have found it lacking. (See *Sonic Manufacturing Tecnhologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) The test is "'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such character and weight as to leave no room for judicial determination that it was insufficient to support a finding."'" (*Id.* at p. 466.) In other words, it is not enough for the Attorney General to argue the evidence here would have been sufficient to support a finding that defendant was armed; it must instead demonstrate the evidence was insufficient to support any contrary finding.

But the Attorney General does only the former, simply pointing to other cases in which a defendant was found to be armed during the commission of a crime in somewhat similar circumstances. However, neither case *compelled* the trial court to reach the same conclusion here. Specifically, in *People v. Delgadillo* (2005) 132 Cal.App.4th 1570, the defendant was driving away from his home where his guns were kept when he was arrested on a charge of manufacturing methamphetamine for sale. The trial court found he had ready access to the guns during his commission of the crime of manufacturing the methamphetamine for sale, and the appellate court – after explaining that "the crime of manufacturing methamphetamine is a continuing crime in that it extends through time and is not limited to a discrete event" – concluded substantial evidence supported that finding. (*Id.* at p. 1575.) The court did not, however, conclude that the defendant was armed at the moment of his arrest, when his guns were in his home and he was in his car; nor did it opine, in the abstract, that a person who is physically separated from a gun by at least one wall and a car door might nonetheless be viewed as having "'ready access'" to that weapon. (*Id.* at p. 1577.) And in *Cervantes*, the other

12

case relied upon by the Attorney General, the defendant was arrested in his home on a charge of possessing heroin for sale, and a gun he admitted belonged to him was found in his wife's purse, also inside the home, and *approximately eight feet away from both him and the heroin*. Consequently, *Cervantes* has little application to the circumstances of this case.

And finally, as defendant points out, the Attorney General has made no claim here that the car with the gun in it was unlocked, or alternatively that defendant had the car's key in his possession during the relevant time period. In the absence of such evidence, the trial court could justifiably conclude defendant would not have had "ready access" to the gun during the relevant time, and thus was not armed during his commission of the offenses for which he was sentenced.

*3. The "Unreasonable Risk of Danger to Public Safety" Standard*

The primary thrust of appellant's brief is the assertion that the phrase "an unreasonable risk of danger to public safety," which describes those *eligible* inmates who should nonetheless be denied resentencing relief, must be narrowly construed. Appellant contends this is so because (1) the phrase describes an exception to a rule that otherwise *requires* resentencing, and such exceptions are typically construed narrowly, (2) the narrow definition of the phrase adopted by the electorate as part of Proposition 47 is statutorily required to be applied "throughout" the Penal Code, and thus applies to Proposition 36 cases, and (3) if the Proposition 47 definition is not adopted, the phrase is void for vagueness.

As to the latter point, appellant argues that without the limitations imposed by Proposition 47, the phrase "unreasonable risk of danger to public safety" is void for vagueness in light of *Johnson v. United States* (2015) 576 U.S. __ [135 S.Ct. 2551, 192 L.Ed.2 569]. *Johnson* held that the residual clause of the Armed Career Criminal Act of 1984, which allows increased punishment for a person who has three or more prior

13

convictions for a felony that "'involves conduct that presents a serious potential risk of physical injury to another'" (*id*. at pp. 2555-2556, italics omitted) was void for vagueness because "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." (*Id*. at p. 2557.)

We note that subdivisions (f) and (g) of section 1170.126 – the resentencing statute in Proposition 36 – seem to invite a similar indeterminate and wide-ranging inquiry. They offer no definition of what would distinguish a *reasonable* risk of danger to public safety – which even the best of incarcerated third strike felons would presumably pose – from the *unreasonable* risk that justifies denial of an otherwise mandatory resentencing. Moreover, subdivision (g) states that when the trial court makes its discretionary determination of unreasonable risk, it "may consider:" (1) "The petitioner's criminal history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;" (2) "The petitioner's disciplinary record and record of rehabilitation while in prison;" and (3) "Any other evidence the court, within its discretion, determines to be relevant." (§ 1170. 126, subd. (f).) Technically, this language does not *require* the court to consider any specific factor, while at the same time allowing it to consider innumerable unspecified ones.

The combination of the undefined standard of "unreasonable risk of danger" and the essentially unlimited evidentiary inquiry authorized by section 1170.126, subdivision (g), gives credence to appellant's claim that, in the abstract, this provision suffers from the same degree of vagueness as the provision deemed void in *Johnson.* And as evidence of the standard's abstract malleability, we note the prosecutor argued below that resentencing should be denied in this case merely because appellant would pose a *greater risk* to the public if he were released from prison than he did while incarcerated – specifically, the prosecutor argued that if released, appellant would be "out

14

into the community . . . travel[ing] the streets to be in a hospital or . . . treatment centers, [thus] putting a lot of people at risk *that aren't at risk now*." (Italics added.)

However, we need not wrestle further with that thorny issue because we also agree with appellant's contention that the definition of an "unreasonable risk of danger to public safety" enacted by the electorate as part of Proposition 47, must be applied to Proposition 36 as well. The incorporation of that definition moots any concern about vagueness.

As we have already noted, when the electorate passed Proposition 47, it not only established a definition for the phrase "an unreasonable risk danger to public safety," it plainly specified that definition should be applied wherever that phrase was "used throughout this Code." (§ 1170.18, subd. (c).) As explained in *People v. Rizo* (2000) 22 Cal.4th 681, 685 (*Rizo*), we interpret voter initiatives like Proposition 47 and Proposition 36 by the same rules that govern statutory interpretation. Thus, "'[w]e turn first to the words of the statute themselves, recognizing that "they generally provide the most reliable indicator of legislative intent."'" (*People v. Leal* (2004) 33 Cal.4th 999, 1007.) And "[w]hen the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.'" (*Rizo, supra*, 22 Cal.4th at p. 685.) However, "'[w]hen "'statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.'"'" (*Leal, supra*, 33 Cal.4th at p. 1008.) Indeed, "'[a]bsent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.'" (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

Other statutes using similar language have been construed as unambiguously referring to the entire code of which it is a part. Thus, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241 (*Marshall*), the court

15

considered a provision in the Public Contract Code defining the term "emergency" "as used in this code." (*Marshall*, at p. 1255, italics omitted.) The *Marshall* court concluded, "There is nothing ambiguous about the phrase 'as used in this code.' In enacting [this] section . . ., the Legislature did not merely define the term 'emergency' for a particular chapter, article or division of the Public Contract Code—rather, it defined the term 'emergency' for the entire Public Contract Code. It logically follows the definition . . . . must be read into [all other sections using that term]." (*Marshall*, at p. 1255; see *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 166 [court concluded that the phrase "'as in this code provided'" used in Penal Code section 182, referred to the Penal Code].)

Here, the Attorney General concedes that point, eschewing any claim that the phrase "as used throughout this Code" is ambiguous. Instead, she asserts the phrase is the product of a drafting error – in other words, the electorate did not actually mean to use those words. In doing so, however, the Attorney General relies extensively on *People v. Lopez,* review granted July 15, 2015, S227028 (*Lopez*), and does so despite *explicitly acknowledging* that review had been granted in the case and that opinion superseded. This is wholly improper (Cal. Rules of Court, rules 8.1115, 8.1105(e)(1)) would justify our disregarding the argument.

But even if we considered the Attorney General's basic point, while ignoring the extensive reliance on *Lopez*, we would find it unpersuasive. The argument, in a nutshell, is that the phrase "as used throughout this Code" was instead intended to read "as used throughout this *Act*" (referring only to those provisions enacted or amended as part of Proposition 47). Although courts are loath to simply rewrite an initiative, there is precedent for "correcting" initiative language in an extreme case. In *People v. Skinner* (1985) 39 Cal.3d. 765, 775, the Supreme Court was faced with interpreting a voter initiative that, for the first time, had imposed a statutory standard for determining criminal insanity. The prior common-law standards, established in accordance with

constitutional principles, had always permitted insanity to be established under either prong of a test stated in the disjunctive:  e.g., "'it must be clearly proved that, at the time of the committing the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; *or*, if he did know it, that he did not know he was doing what was wrong.'" (*Id.* at p. 768.)  However, while the initiative established a similar two-part statutory standard, its wording required *both prongs* of that test to be met:  i.e., insanity would be demonstrated "'only when the accused person proves by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act *and* of distinguishing right from wrong at the time of the commission of the offense.'" (*Ibid*.)

In deciding that such a radical departure from prior law could not have been intended by the electorate, the Supreme Court noted that if the literal language of the initiative were followed, it would likely create significant constitutional problems, and that courts are obligated to interpret a provision in favor of its constitutionality whenever possible.  And because there was no indication in the ballot materials that the initiative had been intended to alter the law in such a fundamental way, the Supreme Court determined that the inclusion of the word "and" rather than "or" was simply an error.

But in this case, by contrast, adhering to the language used by the electorate does not create any constitutional problems.  Moreover, it is by no means clear the electorate would not have intended to employ a consistent definition of dangerousness for purposes of both Proposition 47 and Proposition 36.  To the contrary, it seems reasonable to infer that when the electorate chose to use the exact same phrase – "an unreasonable risk of danger to public safety" – in two separate ballot propositions enacted only two years apart, it meant the same thing.  Otherwise, it could have easily incorporated a different phrase into Proposition 47.

Further, although we agree that incorporating the definition of dangerousness found in subdivision (c) of section 1170.18 into Proposition 36 would

17

restrict the ability of a court to reject a resentencing petition, that result seems quite consistent with the clear message sent by the electorate when it originally passed the Proposition: i.e., that the imposition of indeterminate life terms for third strike crimes which are neither serious nor violent is unduly harsh in the absence of other aggravating circumstances. Whatever more generic goals might be gleaned from the ballot language of Proposition 36, its explicit purpose was to *mandate shorter prison sentences* for certain third strike offenses. That is what resentencing does.

Moreover, in approving Proposition 36, the electorate expressly concluded that *all* defendants sentenced for such offenses in the future would *automatically* be spared the indeterminate life terms imposed under prior law, without regard to the defendant's perceived dangerousness. Given the similarity between the two groups affected by the proposition – the defendants who would be sentenced for third strike offenses *in the future* and the inmates who had *previously* been sentenced for those *same* third strike offenses – it is unclear why that same electorate would nonetheless expect that members of the current inmate group would be granted resentencing relief only grudgingly.

Instead, it is quite plausible, given the similarity between these affected groups, that the electorate expected resentencing of an eligible inmate under Proposition 36 would be refused only in circumstances where that resentencing would pose an *unusually* high risk of danger – such as in cases where the inmate is deemed likely to commit very serious crimes. Of course, that interpretation is entirely *consistent* with the definition of "an unreasonable risk of danger to public safety" contained in Proposition 47. Consequently, we discern no basis for concluding that the language of section 1170.18, subdivision (c), which plainly mandates the application of that standard "throughout the Code" is the product of a drafting error.

18

*4. Substantial Evidence*

Appellant also challenges the sufficiency of the evidence to sustain the trial court's determination that he posed "an unreasonable risk of danger to public safety," and contends the trial court abused its discretion by relying on findings that were not supported by evidence. In light of our determination that a finding appellant poses unreasonable risk of danger must refer specifically to "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667" (§ 1170.18, subd. (c)), we need not address those issues. There is no basis in the record to support an inference that when the trial court concluded appellant "would pose a danger" if resentenced, it had that specific standard in mind. Consequently, we remand the case to the trial court with directions to reconsider appellant's resentencing petition in light of the proper standard.

*5. Right to Jury Trial*

Finally, appellant also asserts he was entitled to a jury trial on the issue of dangerousness. He acknowledges he made no such request at the trial court level, but notes that as of his hearing, the only existing appellate precedent had already rejected that assertion and thus it would have been futile to do so. (See, e.g., *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1302-1303 (*Kaulick*); *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1334-1336.) Appellant urges us to address the issue on the merits in this appeal, and to reject the conclusion reached by the other appellate courts.

We will do the former, but not the latter. Appellant's jury trial argument rests on the assertion that under the process outlined in section 1170.126, the court's initial determination an inmate is "eligible" for resentencing to a lower term under subdivision (e), essentially equates to a finding the inmate is *entitled* to such relief. Then, in step two, the court would be empowered to nonetheless reimpose the higher term if it

19

determines, pursuant to subdivision (f), that imposing the lower term would pose an unreasonable risk of danger to public safety. Based on that interpretation of the process, appellant argues the court's determination of dangerousness in step two amounts to a factual finding which *increases* an inmate's minimum sentence from the term presumptively *set* by a determination of eligibility in step one, and thus the inmate is entitled to have that issue decided by a jury instead, as guaranteed by the Sixth Amendment to the United States Constitution. (See *Alleyne v. United States* (2013) 570 U.S. __, __ [133 S.Ct. 2151, 186 L.Ed.2d 314] [a criminal defendant cannot be subjected to a longer sentence – including a longer minimum sentence – on the basis of judicial fact finding].)

Key to appellant's argument is his portrayal of section 1170.126 as requiring a two-step process. In appellant's view, the two steps involved in this process are not part of a *single* inquiry, but should instead be viewed as essentially two *separate* proceedings. In the first step, the court determines whether a petitioner is "entitled" to relief; and in the second step, the court will decide the terms of that relief – either the petitioner will be resentenced to the lower term, or to another indeterminate life sentence, based on whether imposing the lower term represents "an unreasonable risk of danger to the public safety." (§ 1170.126, subd. f.)

We reject this portrayal of the section 1170.126 process. Contrary to appellant's theory, at no point in the process outlined in section 1170.126 is the petitioner subjected to the risk of a *longer* sentence. Here, as in all cases to which section 1170.126 applies, the indeterminate life sentence a petitioner might end up with was the one *already imposed* in an earlier proceeding, and we presume appropriately. What section 1170.126 does is offer the opportunity for an inmate to have that lengthy sentence recalled, so that the *shorter term* specified in section 1170.126 can be imposed.

A petitioner who is merely deemed "eligible" for resentencing under subdivision (e) of section 1170.126 has not obtained any relief from his indeterminate life

20

sentence – presumptive or otherwise. It is not until after a court makes the discretionary determination that resentencing the inmate to the lower term would not pose an unreasonable danger to public safety, that the inmate's sentence is recalled and he becomes *entitled* to resentencing in accordance with the statute. But if the court determines instead that resentencing the inmate *would* pose an unreasonable danger, then the inmate's indeterminate life sentence remains in place *and unchanged*. In these circumstances, the inmate's Sixth Amendment right to a jury trial, and to proof beyond a reasonable doubt, is not implicated.

This same point was cogently made in *Kaulick*: "Penal Code section 1170.126, subdivision (f) does not state that a petitioner eligible for resentencing has his sentence immediately recalled and is resentenced to either a second strike term (if not dangerous) or a third strike indeterminate term (if dangerousness is established). Instead, the statute provides that he 'shall be resentenced' to a second strike sentence 'unless the court . . . determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' In other words, dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed *in order for a defendant to be resentenced at all*. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court *does not resentence the prisoner*, and the petitioner simply *finishes out the term to which he or she was originally sentenced*." (*Kaulick, supra*, 215 Cal.App.4th at pp. 1302-1303, italics added.)

We agree with this analysis. Appellant argues, however, that *Kaulick*'s interpretation of the "shall be sentenced . . . unless" language in section 1170.126, subdivision (f) "cannot be squared" with decisions construing similar language as creating a *presumptive* sentence which must be imposed unless additional facts are found (i.e., defendant's "dangerousness") to justify an increase. The argument is unpersuasive, because as *Kaulick* points out, the section 1170.126 proceeding is not a sentencing

21

proceeding – instead, it is a proceeding designed to determine *whether* an inmate will be resentenced.

Kaulick also relied on the United States Supreme Court's determination in *Dillon v. United States* (2010) 560 U.S. 817, 828 [130 S.Ct. 2683, 177 L.Ed.2d 271] (*Dillon*), that a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt were not implicated when Congress passed legislation (18 U.S.C. § 3582(c)(2)) that provided prisoners with the opportunity to petition the court for a discretionary *reduction* in their sentences based on subsequent downward modifications to the federal sentencing guidelines. (*Kaulick, supra*, 215 Cal.App.4th at p. 1304.) We find *Dillon* persuasive as well.

Significantly, the Supreme Court emphasized in *Dillon* that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." (*Dillon, supra*, 560 U.S. at p. 825.) The Supreme Court then explained that "[n]otably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents *a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines*. [¶] Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment . . . ." (*Id.* at p. 828.)

Kaulick found *Dillon*'s language applicable, since in this situation as well, "[t]he retrospective part of [Prop. 36] is . . . an act of lenity on the part of the electorate"

22

and "provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues." (*Kaulick, supra*, 215 Cal.App.4th at pp. 1304-1305.) We agree.

Other courts have utilized essentially the same analysis in concluding no jury trial is required in comparable situations. In *People v. Benitez* (2005) 127 Cal.App.4th 1274 (*Benitez*), the court rejected a similar argument made in the context of section 667.61, which allows the court to make a discretionary determination that a defendant is qualified for probation as an alternative to imposing a lengthy prison sentence. The court explained that "[f]inding a defendant ineligible for probation is not a form of punishment, because probation itself is an act of clemency on the part of the trial court." Consequently, the determination "is not subject to the rule of *Blakely* [*v. Washington* (2004) 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403]." (*Benitez,* at p. 1278.)

In *People v. Garcia* (2004) 121 Cal.App.4th 271, the court held there was no federal constitutional right to a jury determination of whether the defendant's first degree burglary qualified as a violent felony for purposes of the presentence conduct credit limitation prescribed by section 2933.1, subdivision (c). And in *People v. Lara* (2012) 54 Cal.4th 896, 901, our Supreme Court cited *Garcia* with approval, noting that a jury determination was not required because "facts invoked to limit conduct credits *do not increase* the penalty for a crime." (Italics added.)

Finally, in *People v. Solis* (2001) 90 Cal.App.4th 1002, the court rejected a contention that the determination of whether section 654 applies must be made by a jury: "'The question of whether section 654 operates to "stay" a particular sentence does not involve the determination of any fact that could increase the penalty for a crime beyond the prescribed statutory maximum for the underlying crime. . . .' [Citation.] 'Unlike the "hate crime" provision in *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2 435]], section 654 is not a sentencing "enhancement." On the contrary, it is a

23

sentencing "reduction" statute. Section 654 is . . . a discretionary benefit provided by the Legislature to apply in those limited situations where one's culpability is less than the statutory penalty . . . .'" (*People v. Solis, supra*, 90 Cal.App.4th at pp. 1021-1022.)

As all of these cases make clear, an inmate has no constitutional right to have a jury determine whether the sentence properly imposed upon him in accordance with the law should be *reduced*. Because that is the remedy offered by section 1170.126, appellant had no right to a jury determination of any factual issue, and no right to have adverse factual finding subjected to proof beyond a reasonable doubt.

DISPOSITION

The order is reversed and the case is remanded to the trial court with directions to reconsider whether resentencing appellant would pose "an unreasonable risk of danger to public safety" in accordance with the proper standard.

**CERTIFIED FOR PUBLICATION**

RYLAARSDAM, J.

I CONCUR:

BEDSWORTH, J.

24

O'LEARY, P.J., concurring and dissenting.

I concur in parts 1, 2, and 5 of the majority's discussion, and I respectfully dissent from parts 3 and 4. I agree with the majority's determination in part 2 that Valdez was eligible for resentencing because he did not have a firearm available for offensive or defensive use during the commission of the offenses for which he was sentenced. I also agree with the majority's conclusion in part 5 that Valdez did not have a right to a jury trial to determine whether he posed an unreasonable risk of danger to public safety.

I disagree, however, with the majority's conclusion in part 3 that the more specific definition of "unreasonable risk of danger to public safety" contained in Proposition 47 is the appropriate standard to apply to resentencing petitions under Proposition 36. I do so based on the reasons stated in *People v. Guzman* (Apr. 2, 2015, G049135) [nonpub. opn.], review granted June 17, 2015, S226410.

In part 4, the majority declines to address the sufficiency of the evidence contentions because it remands the matter for the trial court to reconsider the resentencing petition using the Proposition 47 standard. I would affirm the court's order denying the petition because it did not abuse its discretion by concluding Valdez posed an unreasonable risk of danger to public safety. (Pen. Code, § 1170.126, subd. (f) [dangerousness finding within court's discretion]; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1304-1305 [preponderance of evidence standard applied to dangerousness finding].) Evidence of Valdez's criminal history, which included his criminal activity after he was diagnosed with liver disease, was substantial evidence establishing dangerousness. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court did not abuse discretion when factual findings supported by substantial evidence].)


O'LEARY, P. J.

1