[No. E034767. Fourth Dist., Div. Two. Sept. 30, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE DELGADILLO, Defendant and Appellant.

[No. E037122. Fourth Dist., Div. Two. Sept. 30, 2005.]

In re JORGE DELGADILLO, on Habeas Corpus.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1, 2, 4, 5 and 6.

## Counsel

Jill D. Lansing, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez, Angela M. Borzachillo and Lynn McGuinnis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, Acting P. J.**—Defendant Jorge Delgadillo appeals from the judgment entered following jury convictions for manufacturing methamphetamine (count 1), possessing analogs with the intent to manufacture methamphetamine (count 2), and possessing methamphetamine for sale (count 3). (Health & Saf. Code, §§ 11379.6, subd. (a), 11383, subd. (c)(1), 11378.) The jury further found true the allegation in connection with count 1 that defendant was personally armed with a firearm. (Pen. Code, § 12022, subd. (c).)[1] As to count 3, the jury found true the allegation that defendant possessed over one kilogram of methamphetamine. (Health & Saf. Code, § 11370.4, subd. (b)(1).)

Defendant raises various claims of error in this appeal. In the published portion of this opinion, we address and reject defendant's challenge to the sufficiency of the evidence in support of the jury's true finding on the section 12022, subdivision (c) enhancement for being personally armed with a firearm. In the unpublished portion, we address defendant's remaining claims of error, all of which we conclude are meritless. In a related habeas corpus petition, which we also address in the unpublished part of the opinion, defendant alleges he was denied effective assistance of counsel. We conclude defendant has failed to make the required prima facie showing. Therefore, we will affirm the judgment and deny the petition for writ of habeas corpus.

## FACTS

During the morning of June 19, 2001, Detectives Parsons and Duarte of the San Bernardino County Sheriff's Department conducted surveillance of defendant's Los Cedros Avenue residence after receiving a tip of drug activity at that location. At 11:20 a.m. the detectives watched as Jorge Arias parked a green Pontiac in front of defendant's house. Arias then went inside the house, and after about 30 minutes, drove away in defendant's Chrysler Sebring. The deputies then observed defendant enter the Pontiac, remove a small package, and go back inside his house.

Detective Duarte saw defendant drive away from the house in a truck at around 5:00 p.m. Duarte followed and stopped defendant on the freeway and advised him that he had search warrants for the truck and defendant's house. In attempting to search the truck, Detective Duarte discovered that the cover over the truck bed was locked. When he asked defendant for the key, defendant said he did not have one. Despite defendant's claim, Duarte found the key in the glove box and unlocked the cover. In the truck bed, under the

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

cover, the detective found a new 22-liter glass flask and a new heating mantle. Duarte then returned with defendant to his house on Los Cedros.

The search of that house netted two handguns, which were found in the headboard of defendant's bed, a shotgun found in the bedroom closet, approximately $40,000 in cash, two electronic scales, a small amount of methamphetamine, an Edison bill for the Los Cedros address in Arias's name, and a collection agency bill in the name of defendant's wife but with the mailing address of Arias's house on Pacific Street. The deputies also recovered a security surveillance camera from the master bedroom. The camera had been focused on defendant's driveway. From the trunk of the Pontiac that Arias had parked in front of defendant's house, deputies recovered 129 bottles of 1,000-count pseudoephedrine pills.

Meanwhile, Officer Beebee had followed Arias as he drove in defendant's Sebring from defendant's house on Los Cedros Avenue to Arias's house on Pacific Street. In a search of Arias's house, deputies found, among other things, a press that is used to manufacture methamphetamine, two bottles of pseudoephedrine and four bags of methamphetamine, two of which were found in the freezer and were finished product. The other two were buried in the backyard under a doghouse and contained methamphetamine that was still wet. In the backyard deputies also found a new metal pot and propane burners, equipment commonly used in the manufacture of methamphetamine. Detective Beebee also found a telephone number that led them to Edgar Mercado's residence on Norman Road.

Deputies arrived at the Norman Road residence at 11:30 p.m. on June 19th. In a search of that location, which Detective Hilfer videotaped, deputies found numerous items including a burner connected to a five-gallon propane pump with a metal basin, three five-gallon buckets, five or six cases of empty pseudoephedrine bottles, 11 empty one-gallon containers of denatured alcohol, plastic tubing, scales, a coffee grinder that contained white residue, and a cutting agent. The deputies also found "lab trash"—old bed sheets that had been used to strain the liquid that contains ephedrine from the binder. According to an expert witness, separating the ephedrine from the binder in pseudoephedrine pills is the first step in the process of manufacturing methamphetamine.

## DISCUSSION

### 1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1570.

3.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT
## SECTION 12022, SUBDIVISION (C) ENHANCEMENT

Defendant contends there was insufficient evidence to support the section 12022, subdivision (c) enhancement alleging that he was personally armed with a firearm during the commission of the crime of manufacturing methamphetamine because he was not in possession of the guns when he was detained and there was no evidence he was ever armed while at the Norman Road methamphetamine lab. We disagree.

■ Resolution of this issue is controlled by *People v. Bland* (1995) 10 Cal.4th 991 [43 Cal.Rptr.2d 77, 898 P.2d 391] (*Bland*), which holds, in pertinent part, that the crime of drug possession is "a 'continuing' offense, one that extends through time. Thus, throughout the entire time the defendant asserts dominion and control over illegal drugs, the defendant is criminally liable for the drug possession. [Citations.] And when, at any time during the commission of the felony drug possession, the defendant can resort to a firearm to further that offense, the defendant satisfies the statutory language of being 'armed with a firearm in the commission . . . of a felony.' [Citation.]" (*Id.* at p. 999.)

*Bland* involved the general enhancement under subdivision (a) of section 12022, which applies when a defendant is armed with a firearm during the commission of a felony, whereas this case involves the subdivision (c) enhancement that applies when the defendant is personally armed with a firearm during the commission of specified drug crimes, including the crime of manufacturing methamphetamine in violation of Health and Safety Code section 11379.6. (See § 12022, subd. (c).) The difference, however, is irrelevant. The issue here as in *Bland* is what constitutes being armed during the commission of a crime. The term "armed" has been interpreted identically under both subdivision (a) and subdivision (c) of section 12022. According to the Supreme Court "to be 'armed' for purposes of section 12022's additional penalties, the defendant need only have a weapon available for use to further the commission of the underlying felony." (*Bland, supra,* 10 Cal.4th at p. 999.)

In this case, application of the section 12022 armed enhancement depends not only on when but also on where the crime occurred, and therefore turns on what constitutes manufacturing methamphetamine. Is the crime limited to the specific event of cooking the drug or does it extend to the entire process by which the drug is manufactured? As Detective Parsons testified at trial, in sophisticated operations, the crime of manufacturing methamphetamine is a

process that occurs in phases and extends to more than one location in order to reduce the potential for being detected and to protect the various components from being seized by the police or stolen by others. Consequently, in such an operation the cash is kept at one location, the lab is set up at another, and the finished product is stored at yet a third site. This case illustrates that process. According to the evidence presented at trial, raw material (129 bottles of 1,000-count pseudoephedrine pills) and items of lab equipment were kept in the trunks of vehicles parked in front of defendant's house. The lab itself was at the Mercado residence. More equipment along with finished product were stored in the freezer and buried in the backyard at Arias's home. The cash proceeds, along with firearms, were kept at defendant's home, which brings the methamphetamine manufacturing operation full circle, thereby connecting not only the participants, but also the locations.

■ Like the crime of drug possession at issue in *Bland*, we are of the view that the crime of manufacturing methamphetamine is a continuing crime in that it extends through time and is not limited to a discrete event. Methamphetamine manufacturing in this case occurred both over time and at various locations. Because the firearms were in defendant's bedroom along with a significant sum of money, and in close proximity to cars in which defendant and his colleagues stored lab equipment and raw material, those firearms were available to defendant to use offensively or defensively at any time during the manufacturing process. Thus, the evidence was sufficient to support the jury's true finding on the section 12022, subdivision (c) armed enhancement.

**4.–6.***

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Richli, J., concurred.

**GAUT, J.,** Concurring and Dissenting.—I concur in the majority's opinion on all of the issues raised with the exception of its conclusion there was sufficient evidence to support the Penal Code section 12022, subdivision (c) enhancement alleging defendant was personally armed with a firearm during the commission of the crime of manufacturing methamphetamine.

Defendant was convicted of manufacturing methamphetamine, possessing analogs with the intent to manufacture methamphetamine, and possessing

---

*See footnote, *ante*, page 1570.

methamphetamine for sale. He was also found guilty of being personally armed with a firearm in connection with manufacturing methamphetamine. (Pen. Code, § 12022, subd. (c).) It is this latter conclusion with which I disagree.

The evidence to support the personally armed allegation in connection with the manufacture of a controlled substance, in this case methamphetamine, was based upon the sheriff's office search of defendant's bedroom where it found two handguns located in the headboard of defendant's bed and a shotgun in his bedroom closet. During that search the sheriff's officer also found $40,000 in cash, electronic scales, some methamphetamine, and pseudoephedrine pills in a car parked in the front of defendant's house. There was no evidence defendant had ever been to the Norman Road methamphetamine lab or had personally participated in the actual manufacture of methamphetamine.

The majority relies exclusively on *People v. Bland* (1995) 10 Cal.4th 991 [43 Cal.Rptr.2d 77, 898 P.2d 391] to support its position. *Bland* simply does not apply. In *Bland,* the California Supreme Court affirmed defendant's conviction for possession of cocaine in his house with an enhancement under Penal Code section 12022, subdivision (a)(2) for possessing an assault weapon in the house, even though the gun was unloaded and even though defendant was in a police car outside his home when the drugs and weapon were found. The court concluded the firearm must be "available to the defendant to use in furtherance of the underlying felony." (10 Cal.4th at p. 998.)

The *Bland* court found that Penal Code section 12022, subdivision (a) was violated when the defendant could resort to use of a firearm to further the felony drug possession; it was immaterial that defendant was not present when the police seized his assault rifle as long as it was "available for use in furtherance of the drug offense at any time during his possession of the drugs." (*People v. Bland, supra,* 10 Cal.4th at p. 1000.) The court concluded that "contemporaneous possession of illegal drugs and a firearm will satisfy the statutory requirement of being 'armed with a firearm in the commission' of felony drug possession only if the evidence shows a nexus or link between the firearm and the drugs." (*Id.* at p. 1002.)

The *Bland* court found that keeping the illegal drugs with a firearm in close proximity created a risk of injury or death if used to protect against theft of the drugs. That conclusion has no applicability to the case here. There is no evidence that the defendant's guns were available to further the manufacture of methamphetamine or that there was any nexus between the firearms and the manufacture of methamphetamine. The guns may well have been available to preclude the theft of the methamphetamine or money defendant

possessed in his house, but there is no evidence of a nexus between the guns and the manufacture of methamphetamine.

The majority relies upon the contention that the "manufacture" of methamphetamine is a continuing crime unlimited by a discrete event or location. Hence the availability of firearms at defendant's house could be available at any time during the manufacturing process. Following that line of reasoning the manufacturing could occur in Chicago and a firearm located in Southern California would satisfy Penal Code section 12022, subdivision (c) so long as the Southern California defendant periodically sent money to Chicago to be used to further the manufacturing process.

In this case the People have not established defendant was ever at the lab or that he was at the lab with the guns and thus they have therefore not satisfied the "underlying intent of the Legislature . . . to deter persons from creating *a potential for death or injury resulting from the very presence of a firearm at the scene of the crime.*" (*People v. Garcia* (1986) 183 Cal.App.3d 335, 350 [228 Cal.Rptr. 87] (italics in original).) The purpose of Penal Code section 12022, subdivision (c) is to require "proof the defendant personally had a firearm 'at the ready.' " (*People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1663 [11 Cal.Rptr.2d 267]).

In *People v. Jackson* (1995) 32 Cal.App.4th 411, 421 [38 Cal.Rptr.2d 214], the defendant's gun was in a car a substantial distance away from where the defendant committed various sexual offenses. The court concluded: "Evidence a gun was in a car two blocks away from where the crimes occurred is insufficient evidence of the presence of a firearm 'at the scene of the crime' ([*People v.*] *Reaves* [(1974) 42 Cal.App.3d 852 [117 Cal.Rptr. 163]]). Nor from this distance of two blocks was the gun 'available for use' as that phrase is defined where he could not reach it or have 'ready access' to the gun ([*People v.*] *Mendival* [(1992) 2 Cal.App.4th 562 [3 Cal.Rptr.2d 566]])."

The Jackson court explained that "the purpose behind the sentence enhancement provisions for crimes where firearms are involved is to 'deter persons from creating the potential for death or injury resulting from the very presence of a firearm at the scene of the crime.' (*People v. Reaves, supra*, 42 Cal.App.3d at p. 856). However, this threat is appreciably diminished, if not removed, where access to a firearm is only a theoretical possibility. For this reason, as the foregoing authorities point out, to warrant the increased punishment for being armed with a firearm there must be some evidence the presence of the gun at the scene of the crime created an increased risk because it was within reach, handy or accessible to the defendant." (*People v. Jackson, supra*, 32 Cal.App.4th at p. 422.)

The People argue there was sufficient evidence to infer that defendant was at the methamphetamine lab at some point and that, while there, he was carrying a gun or his gun was readily accessible. The People's argument is pure speculation. When defendant was detained, he was transporting methamphetamine manufacturing equipment in his truck but the guns were not in his possession or nearby. They were at home, a substantial distance from the arrest and apparently even farther from the situs of the lab. There is no evidence tying the guns to the methamphetamine manufacturing offense: the guns were not readily available at the methamphetamine lab or at the time defendant was stopped while transporting drug manufacturing equipment.

The arming enhancement under Penal Code section 12022, subdivision (c) attaching to defendant's conviction for manufacture of methamphetamine was not justified by the evidence and should be reversed.

Appellant's petition for review by the Supreme Court was denied January 18, 2006. Chin, J., did not participate therein.