Opinion
MURRAY, J.
In 2001, defendant was convicted of possession of a sharp instrument in prison (Pen. Code, § 4502, subd. (a))[1] and assault by an inmate by means likely to cause great bodily injury (§ 4501). The trial court found true three prior strike allegations. (§§ 667, subds. (b)-(i), 1170.12.) The trial court sentenced defendant to consecutive terms of 25 years to life on each count. In an unpublished opinion, this court affirmed the judgment. (People v. Valdez (May 13, 2003, C038924) [nonpub. opn.] (Valdez).)
Defendant appeals from the trial court’s denial of his petition for recall of sentence under the Three Strikes Reform Act of 2012 (enacted by Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012); §§ 667, 1170.12, 1170.126) (Proposition 36 or the Act). As to each conviction, defendant asserts that: (1) the trial court was not authorized to make findings of fact and the People were required to plead and prove any disqualifying facts in the prosecution of his commitment offense; (2) substantial evidence did not support the trial court’s determinations regarding his ineligibility; and (3) the trial court employed the wrong standard of proof, in that it should have applied the “clear and convincing evidence” standard rather than the “preponderance of the evidence” standard. Defendant also asserts that, if we conclude that he is eligible for resentencing on one conviction but ineligible on the other, he should be resentenced on the eligible offense.
In the published part of this opinion we conclude there was substantial evidence supporting the trial court’s determination that defendant was *1342 “armed” with the sharp instrument in prison. Defendant had the weapon available for use while he possessed it in his cell and the fact that the weapon was seized from his cell by correctional officers while defendant was away taking a shower does not make defendant eligible for resentencing under Proposition 36. Possession of a weapon can be a continuing offense. Consequently, a person is armed with a weapon for purposes of the Proposition 36 resentencing exception if the evidence from the record of conviction establishes that he or she was present with the weapon and had it available for use at any time he or she had actual or constructive possession of it within the time period for which the defendant was charged and convicted.
In the unpublished parts of this opinion, we discuss and reject defendant’s other contentions.
We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Current Convictions[2]

Possession of a Sharp Instrument in Prison (§ 4502)

“In December 1998, Correctional Officer Kevin Keene was working as a floor officer in the administrative segregation section of ‘six block’ of the California State Prison, Sacramento. While defendant and codefendant Jose Alberto Dubon were away taking showers, Keene conducted a routine search of their cell. The cell had two bunks and a toilet on the right-hand side and upper and lower cubicles on the left-hand side.
“In the upper cubicle, Keene found a long stiff straight object wrapped in plastic. When he unwrapped it, Keene saw that the object was an ‘altered *1343 toothbrush with razor melted’ into the handle, ‘with cardboard cover piece, . . . two pieces of clear cellophane plastic.’ Keene confiscated the object, put it into evidence, and notified the sergeant of his discovery. No inmates other than defendant and Dubon would have been allowed in their cell.
“Keene testified that inmates in administrative segregation are not allowed to have disposable razors or sharp metal objects. Inmates in the general population are allowed to have razors but are not allowed to alter them or remove them from their plastic casings. . . . Keene was not sure which inmate ordinarily used the upper cubicle.” (Valdez, supra, C038924, fn. omitted.) We set forth additional facts regarding this offense in our discussion, post.
Assault by Inmate by Means Likely to Cause Great Bodily Injury (§ 4501) '
“Several months after the incident in count three, defendant, Dubon, and two other inmates were seen assaulting a newer inmate. Defendant struck the victim from the back at about the same time that Dubon struck him in the front. Defendant and Dubon kicked the victim with ‘full force kicks.’ Both men ignored Correctional Officer Ernest Johnson’s order to stop fighting and were undeterred when he fired a special gun that shot rubber grommets. When Johnson resorted to tear gas, the inmates dispersed. At that point, the victim was on the ground and was not moving. He later regained consciousness and tried to stand but fell down a couple of times. He suffered multiple injuries to his face and head, including a large hematoma to his right forehead, an open contusion on his right forehead, a bloody nose, multiple bruising to his upper face, blood in his mouth, a shoe imprint on the left side of his face, and abrasions on both knees and elbows.” (Valdez, supra, C038924.)
Petition for Resentencing
In 2014, defendant filed a petition for recall of his sentence pursuant to section 1170.126, which is part of the Act. Defendant asserted that, under section 1170.126, subdivision (e)(1), his convictions of possession of a sharp instrument while in prison (§ 4502, subd. (a)) and assault by a prisoner by means of force likely to produce great bodily injury (§ 4501) were neither serious felonies within the meaning of section 1192.7, nor violent felonies within the meaning of section 667.5, and therefore these convictions did not render him ineligible for resentencing under the Act. Defendant also asserted that, in violating sections 4501 and 4502, subdivision (a), he was not armed with a firearm or deadly weapon, did not use a firearm or deadly weapon, and he did not intend to cause great bodily injury to another person within the *1344 meaning of section 667, subdivision (e)(2)(C)(iii), and therefore he was not ineligible for resentencing under the Act. (§ 1170.126, subd. (e)(2).) Defendant further asserted that these convictions did not otherwise render him ineligible for relief. Thus, according to defendant, he satisfied all of the criteria for resentencing under the Act, and he requested that the trial court resentence him as a second strike offender.
Trial Court’s Denial of Petition
The trial court rejected each of defendant’s contentions and denied the petition. We discuss post the court’s factual findings concerning each conviction and its determination of resentencing ineligibility based on those findings.
The trial court also rejected defendant’s contention that, if it were to make findings of fact relevant to issues, it would violate the mandate of Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] that findings of fact that may result in an increase in punishment must be made by a jury beyond a reasonable doubt. The court ruled that Apprendi does not apply to section 1170.126 resentencing proceedings because resentencing pursuant to that section would constitute a downward departure from a previously imposed sentence, and there is no requirement that disqualifying factors must have previously been pleaded and proved to a jury beyond a reasonable doubt.
The trial court also ruled that its conclusion as to either conviction rendered defendant ineligible for resentencing under the Act. In this regard, the trial court followed those cases which had concluded that a defendant is ineligible for resentencing under the Act if any of the defendant’s current convictions render him or her ineligible, although the court noted that the issue was pending before our high court at the time.[3]
Accordingly, the trial court denied defendant’s petition for resentencing.
*1345 DISCUSSION
I. The Act
“Prior to its amendment by the Act, the Three Strikes law required that a defendant who had two or more prior convictions of violent or serious felonies receive a third strike sentence of a minimum of 25 years to life for any current felony conviction, even if the current offense was neither serious nor violent. [Citations.] The Act amended the Three Strikes law with respect to defendants whose current conviction is for a felony that is neither serious nor violent. In that circumstance, unless an exception applies, the defendant is to receive a second strike sentence of twice the term otherwise provided for the current felony, pursuant to the provisions that apply when a defendant has one prior conviction for a serious or violent felony.” (Johnson, supra, 61 Cal.4th at pp. 680-681, fn. omitted.)
“The Act’s exceptions to the new sentencing provisions relate to a defendant’s current offense and prior offenses.” (Johnson, supra, 61 Cal.4th at p. 681.) These exceptions are set forth in sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C). (Johnson, at p. 681.)
The Act addressed both prospective sentencing and retrospective resentenc-ing. This case involves retrospective resentencing. “In addition to reducing the sentence to be imposed for some third strike felonies that are neither violent nor serious, the Act provides a procedure by which some prisoners already serving third strike sentences may seek resentencing in accordance with the new sentencing rules. [Citation.] ‘An inmate is eligible for resen-tencing if . . . [¶] . . . [t]he inmate is serving an indeterminate term of life imprisonment imposed pursuant to [the Three Strikes law] for a conviction of a felony or felonies that are not defined as serious and/or violent . . . .’ [Citation.] Like a defendant who is being sentenced under the new provisions, an inmate is disqualified from resentencing if any of the exceptions set forth in section 667, subdivision (e)(2)(C) and section 1170.12, subdivision (c)(2)(C) are present.” (Johnson, supra, 61 Cal.4th at p. 682.)
The specific exceptions applicable in this case are: “[d]uring the commission of the current offense, the defendant . . . was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.” (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii), italics added.)
II., III.*
*1346 IV. Sufficiency of the Evidence Supporting the Ineligibility Determinations
A. Standard of Review
We review the factual basis for the trial court’s finding of resentencing ineligibility under the substantial evidence test. We review the whole record in a light most favorable to the order to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find ineligibility by a preponderance of the evidence. (See Guilford, supra, 228 Cal.App.4th at p. 661 [applying the substantial evidence test to a determination of resentence ineligibility under the Act]; accord, People v. Perez (2016) 3 Cal.App.5th 812, 833 [208 Cal.Rptr.3d 138], review granted Jan. 11, 2017, S238354; People v. Newman (2016) 2 Cal.App.4th 718, 727 [206 Cal.Rptr.3d 427] (Newman), review granted Nov. 22, 2016, S237491.)
B. Possession of a Sharp Instrument in Prison—Armed with a Deadly Weapon
Defendant asserts that the trial court’s determination that he was armed with a deadly weapon when he violated section 4502, possession of a sharp instrument in prison,[9] was not supported by substantial evidence. We disagree.
1. The Trial Court’s Ruling
The trial court found that defendant was armed with a deadly weapon within the meaning of section 667, subdivision (e)(2)(C)(iii). The court stated that, in this context, to be “ ‘armed with a deadly weapon’ ” means that a person has “the deadly weapon available for use, either offensively or defensively.” In concluding that the circumstances here satisfied this requirement, the trial court stated: “Here, defendant. . . and [his] cellmate . . . were only gone briefly from their cell, to take a shower; otherwise, the two and only those two spent most of their time in that cell. As the possession was ongoing, and defendant . . . most of the time was present in the cell and so near to the weapon as to have it available to him offensively or defensively during the times of his possession, he clearly was ‘armed’ with the deadly weapon when he was committing the offense.” Accordingly, the court concluded that defendant was ineligible for resentencing on this conviction under the Act.
*1347 2. Analysis
“A defendant is armed if the defendant has the specified weapon available for use, either offensively or defensively.” (People v. Bland (1995) 10 Cal.4th 991, 997 [43 Cal.Rptr.2d 77, 898 P.2d 391] {Bland)) “ ‘ ”[I]t is the availability—the ready access—of the weapon that constitutes arming.” ’ ” (People v. White (2014) 223 Cal.App.4th 512, 524 [167 Cal.Rptr.3d 328] (M. White), quoting Bland, at p. 997, quoting People v. Mendival (1992) 2 Cal.App.4th 562, 574 [3 Cal.Rptr.2d 566].)
In Bland, supra, 10 Cal.4th 991, our high court described the issue presented in the case as follows: ‘“is a defendant convicted of a possessory drug offense subject to this ‘arming’ enhancement when the defendant possesses both drugs and a gun, and keeps them together, but is not present when the police seize them from the defendant’s house?” (Id. at p. 995, italics added.) Police investigating the defendant’s possible involvement in the theft of auto parts searched his house and found rock cocaine in his bedroom closet. {Ibid) Under the bed, they found an assault rifle. {Ibid) At the time of the search, the defendant was in custody inside a police vehicle parked outside of his house. {Ibid) The opinion does not make note of specifically where the defendant was located prior to being placed in the patrol vehicle. The Court of Appeal affirmed the underlying convictions, but reversed the three-year arming enhancement, concluding that the defendant was not armed because he was outside of the house when the weapon was found. {Id, at p. 996.)
In reversing the Court of Appeal’s decision, the California Supreme Court observed that, by focusing on the defendant’s proximity to the weapon at the time the police found it, the Court of Appeal erred because its temporal focus was too narrow. (Bland, supra, 10 Cal.4th at p. 996.) Our high court explained: ‘“[W]hether defendant was ‘armed in the commission’ of the continuing offense of drug possession—it is immaterial whether defendant was present when police seized the assault rifle together with the cache of crack cocaine, so long as he had the firearm available for use in furtherance of the drug offense at any time during his possession of the drugs. From evidence that the assault weapon was kept in [the] defendant’s bedroom near the drugs, the jury could reasonably infer that, at some point during the felonious drug possession, defendant was physically present with both the drugs and the weapon, giving him ready access to the assault rifle to aid his commission of the drug offense.” (Id. at p. 1000, italics added.) In its reasoning, the court emphasized the continuing nature of drug possession. (Id. at pp. 999-1000, 1002, 1004.) To summarize, the court wrote: ‘“[W]hen the prosecution has proved a charge of felony drug possession, and the evidence at trial shows that a firearm was found in close proximity to the illegal drugs *1348 in a place frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm’s presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession. These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was ‘armed with a firearm in the commission’ of a felony within the meaning of section 12022.” (Bland, at pp. 1002-1003, fn. omitted, italics added.) Thus, in the context of ongoing or continuous possession, our high court does not require the weapon be readily ‘“available” or available for ‘“immediate use” at the very moment the weapon is found.
Here the possessory crime is the possession of a sharp instrument in prison. Possessory offenses, such as drug possession or possession of a deadly weapon, are “ ‘continuing’ offense[s], one[s] that extend[] through time” and create criminal liability ‘“throughout the entire time the defendant asserts dominion and control.” (Bland, supra, 10 Cal.4th at p. 999.) Thus, even if it is true that the weapon was not in defendant’s actual physical possession at the precise time it was discovered, this does not necessarily undermine a finding that he was armed with the deadly weapon at other relevant times so as to support the trial court’s determination. The instant case, where the weapon is stored in an inmate’s cell, is an example of continuing or ongoing possession. Indeed, the discovery of the weapon in defendant’s cell presents a stronger case for a finding that he was armed than the circumstances in Bland because defendant, an administrative segregation prisoner, spent the vast majority of his time in the cell where the weapon was discovered, whereas it is not clear how much time the defendant in Bland spent in his bedroom where police discovered the assault rifle.
Moreover, similar to the situation in Bland, there is a safety risk here. The Bland court explained that ‘“[t]he crime scene in a drug possession case is the place where the defendant keeps his or her cache of illegal drugs. A firearm kept near the drugs creates an ongoing risk of serious injury or death from use of the weapon to protect the defendant during a drug sale, to guard against theft of the drugs, or to ward off police. Yet defendant would have us ignore the continuing nature of that risk.” (Bland, supra, 10 Cal.4th at pp. 1001-1002.) Like in Bland, we should not ignore the continuing nature of the safety risk here. (Id. at p. 1002.) Possession of a weapon by a state prisoner creates a continuing risk of serious injury or death to other inmates and staff and jeopardizes the security of the facility. Thus, incarcerated felons who possess such weapons are particularly dangerous. And as we shall discuss post, the electorate was particularly concerned with keeping dangerous felons incarcerated when it enacted Proposition 36.
*1349 People v. Delgadillo (2005) 132 Cal.App.4th 1570 [34 Cal.Rptr.3d 507] (Delgadillo) is another example of the situation where, even though the defendant was not present when a weapon was found, the court held that he was armed because the weapon had earlier been available for use in furtherance of the drug offenses during the commission of those crimes. In Delgadillo, law enforcement followed the defendant from his house and stopped him some distance away on a freeway. (Id. at p. 1572.) Law enforcement then executed a search warrant at his house. Two guns were found in the headboard of the defendant’s bed and methamphetamine, cash, and indicia of methamphetamine sales and manufacturing were found elsewhere inside the home and in a car parked outside. (Id. at p. 1573.) The Delgadillo court followed the Bland court’s reasoning concerning the continuing nature of drug possession, noting “the crime of drug possession is ‘a “continuing” offense, one that extends through time . . . [a]nd when, at any time during the commission of the felony drug possession, the defendant can resort to a firearm to further that offense, the defendant satisfies the statutory language of being “armed with a firearm in the commission ... of a felony.” ’ ” (Delgadillo, at p. 1574, italics added.) Focusing the temporal analysis of arming on occasions prior to his arrest, the court held that the firearms were available for the defendant to use offensively or defensively “at any time during the manufacturing process,” even though that process took place over time and at different locations. (Id. at pp. 1574-1575, italics added.)
It is true that Bland and Delgadillo are “ ‘armed in the commission’ ” (italics added) cases and that the Bland court noted “ ‘in the commission’ ” (italics added) means “any time during and in furtherance of the felony.” (Bland, supra, 10 Cal.4th at pp. 1000, 1001.) Because section 1170.126 requires only that the arming be “during” the commission of the crime, there is no facilitative nexus requirement as when the arming must also be in furtherance of a felony. (People v. Hicks (2014) 231 Cal.App.4th 275, 283-284 [179 Cal.Rptr.3d 703] (Hicks) [crime of possession of firearm by a felon precludes § 1170.126 relief under the arming prohibition]; accord, People v. White (2016) 243 Cal.App.4th 1354, 1362-1363 [197 Cal.Rptr.3d 397] (T. White) [same]; People v. Osuna (2014) 225 Cal.App.4th 1020, 1032 [171 Cal.Rptr.3d 55] (Osuna) [same].)
In Hicks, a published case of this court, parole agents and police officers approaching an apartment complex looking for a parolee at large encountered the defendant and two companions. (Hicks, supra, 231 Cal.App.4th at p. 280.) After the defendant removed a clear plastic bag from his sweat pants and threw it away, officers frisked him and found five .380-caliber bullets. (Ibid.) Additionally, an officer retrieved the clear bag and discovered that it contained rock cocaine. (Ibid.) Officers proceeded to the apartment the defendant and his companions were there to visit, and, in that apartment, they *1350 found a backpack containing a loaded .380-caliber handgun. (Ibid.) Two witnesses, who subsequently gave inconsistent testimony, told the police that the defendant had left the backpack in the apartment. (Id. at pp. 280-281.) This court affirmed the trial court’s determination that the defendant was ineligible for resentencing because he was armed with a firearm when he committed the crime of being a felon in possession of a firearm. (Id. at pp. 279-280.) The Hicks court stated: “unlike section 12022, which requires that a defendant be armed ‘in the commission of’ a felony for additional punishment to be imposed . . . , the Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm ‘[d]uring the commission of’ the current offense.” (Hicks, at pp. 283-284.) “Thus, there must be a temporal nexus between the arming and the underlying felony, not a facilitative one. The two are not the same.” (Id. at p. 284, citing Bland, supra, 10 Cal.4th at p. 1002.) The Hicks court continued: “Following this reasoning, defendant was armed with a firearm during his possession of the gun, but not ‘in the commission’ of his crime of possession. There was no facilitative nexus; his having the firearm available for use did not further his illegal possession of it. There was, however, a temporal nexus. Since the Act uses the phrase ‘[djuring the commission of the current offense,’ and not ‘in the commission of’ the current offense [citations], and since at issue is not the imposition of additional punishment but rather eligibility for reduced punishment, we conclude the plain language of the Act disqualifies an inmate from resentencing if he or she was armed with a firearm during the unlawful possession of that firearm. [¶] Here, the trial court stated it found beyond a reasonable doubt that defendant was personally armed with the firearm he was convicted of possessing. There was sufficient evidence to support this finding based on the initial statements of the two recanting witnesses . . . that it was defendant who had the backpack with the gun inside and put it in the tenant’s apartment.” (Hicks, at p. 284, italics added.)
Similarly, here, defendant was armed with the deadly weapon during his commission of possession of a sharp instrument in prison. Contrary to defendant’s contention, the possession of the weapon need not facilitate another felony, e.g., drug possession or drug manufacturing. We need only look to whether the inmate was armed during the possession of the weapon. Further, we see no need to reconsider, as urged by defendant, this court’s determination in Hicks that “there must be a temporal nexus between the arming and the underlying felony, not a facilitative one.” (Hicks, supra, 231 Cal.App.4th at p. 284.) As we have noted, other courts are in accord. (T. White, supra, 243 Cal.App.4th at pp. 1362-1363; Osuna, supra, 225 Cal.App.4th at p. 1032.) Additionally, on its facts, Hicks provides another example of the fact that a defendant need not be present with the weapon when it is discovered to be deemed “armed” within the meaning of the exception rendering a defendant ineligible for resentencing under the Act.
*1351 More recently, in T White, supra, 243 Cal.App.4th 1354, a felon in possession of a firearm prosecution, the Fourth Appellate District, Division Three, observed that “a defendant is armed with a weapon even though it is not carried on his person, when he is aware it is hidden in a place readily accessible to him.” (Id. at p. 1362.) This precisely describes the circumstance at issue here. Although the facts in T White are different, in the instant case the weapon was hidden in a place that was readily accessible to defendant when he was nearby.
In T. White, a police officer spotted the defendant walking down the street carrying a fanny pack. {T. White, supra, 243 Cal.App.4th at p. 1358.) Because the defendant matched the general description of a suspect in an armed robbery, the officer drove his patrol car next to the defendant. (Ibid.) The defendant turned away and walked into the parking lot of a motel, and the officer followed. (Ibid.) The officer lost sight of the defendant but moments later, he saw the defendant walking along the second story corridor of the motel. (Ibid.) The officer got out of his car and asked the defendant to come speak with him and defendant came down the stairs toward the officer. (Ibid.) The officer noted the fanny pack appeared to be less full than it had appeared before. (Ibid.) Retracing the defendant’s path, the officer found a loaded nine-millimeter semiautomatic pistol in a trash can. (Ibid.) A search of the fanny pack revealed two bullets of the same make and caliber as those in the gun. (Ibid.) The defendant testified at trial, denying that he had a firearm when he arrived at the hotel and denying that he placed a firearm in the trash can. (Ibid.) The defendant did admit, however, that he walked by the garbage can. (Ibid.) He testified he had found the two bullets on the motel stairs and picked them up. (Ibid.)
On appeal from the denial of his Proposition 36 petition, the defendant in T White contended that his case was different from the situation where the defendant is seen in actual possession and thus excluded under the arming exception.[10] (T. White, supra, 243 Cal.App.4th at pp. 1357, 1361.) Unlike that situation, according to the defendant, he could not be found to have been armed because the police never saw him discard the weapon in the trash can or otherwise observed him in physical possession of it. (Id. at p. 1361.) Rejecting that contention, the Court of Appeal reasoned, ‘“it [was] clear [the] defendant’s conviction was based on either the inference he discarded the gun into the trash can on that occasion or he had placed it there earlier. Either way, his possession amounts to being armed.” (Id. at p. 1357, italics added.) *1352 The court explained that the jury necessarily concluded that the defendant possessed the gun found in the trash can, and, in turn, that finding necessarily implied that the defendant was “at least aware it was hidden there.” (Id. at p. 1361.) The Court of Appeal reasoned: “When [the] defendant was first approached by the police officer in the street, he turned directly into the motel, and assuming he did not have the gun in his fanny pack, he went straight for the trash can where he knew it was already hidden. And as he walked by that trash can—as he conceded he did—that gun was readily accessible to him. That qualifies [the] defendant as being ‘armed.’ As our Supreme Court has explained, ‘ “[i]t is the availability—the ready access—of the weapon that constitutes arming.” ’ ” (Id. at pp. 1361-1362, quoting Bland, supra, 10 Cal.4th at p. 997.) The T White court concluded: “So even if the jury believed [the] defendant’s testimony that he did not bring the gun into the motel on the occasion in question, its finding that he had possession of the gun located in the trash can, combined with his admission he walked right by it immediately after the police officer drove alongside him, demonstrates he qualified as armed during that possession.” (T. White, at p. 1362.)
Although the facts here are different, the circumstances are similar. The jury necessarily found that defendant possessed the altered toothbrush with the razor melted into the handle.[11] Prior to its discovery, this weapon was readily accessible to defendant when he was in his cell. As in T. White, supra, 243 Cal.App.4th 1354, the weapon was not discovered on defendant’s person or the immediately surrounding area where defendant was stopped. However, the evidence supports a finding that defendant was aware that the weapon was “hidden in a place readily accessible to him.” (Id. at p. 1362.) We also note that both here and in T White, the defendants were under control of law enforcement authorities in a different location when the weapons were discovered.
The case law thus teaches us not to limit the temporal focus for arming to the moment when the weapon was discovered; such a focus is too narrow. (Bland, supra, 10 Cal.4th at p. 996 [Court of Appeal erred by focusing too narrowly on the defendant’s proximity to the assault weapon at the time police found the cocaine and the assault weapon in the defendant’s bedroom].) Possession of a weapon, like drug possession, can be a continuing crime. Thus, when a weapon is available to a defendant to use offensively or defensively at any time during the actual or constructive possession of that weapon within the time period for which a defendant was charged, the *1353 defendant was armed. (See Bland, at p. 997.) The defendant need not be present at the moment when the weapon is discovered, nor must the weapon be immediately available for his or her use at that very moment.
Defendant relies on a hypothetical situation considered in Osuna, supra, 225 Cal.App.4th 1020, as supporting his position. In Osuna, an officer attempted to pull the defendant over after he sped through a school zone. (Id. at p. 1027.) When the defendant finally stopped and exited the car he was driving, he was holding a handgun. (Ibid.) The defendant fled and, approximately 20 minutes later, police arrested him as he exited a house within the perimeter established by police. (Ibid.) Police searched the house and located a handgun in the air conditioning duct and its missing magazine outside the home. (Ibid.) Police discovered a second magazine and ammunition in the vehicle the defendant had been driving. (Ibid.) The Osuna court, affirming the denial of the defendant’s Proposition 36 petition, concluded that the defendant was disqualified from resentencing under the Act because he was armed with a firearm during the commission of the current firearm possession offense. (Osuna, at p. 1040.) The Osuna court stated: the “defendant was actually holding a handgun when he first got out of the car. Thus, factually he was ‘armed with a firearm’ within the meaning of the Act.” (Osuna, at p. 1030.) In dicta, the Osuna court also wrote: “A firearm can be under a person’s dominion and control without it being available for use. For example, suppose a parolee’s residence (in which only he fives) is searched and a firearm is found next to his bed. The parolee is in possession of the firearm, because it is under his dominion and control. If he is not home at the time, however, he is not armed with the firearm, because it is not readily available to him for offensive or defensive use. Accordingly, possessing a firearm does not necessarily constitute being armed with a firearm.” (Ibid., fn. omitted.)[12]
The Osuna court did not discuss the reasoning in Bland or Delgadillo, cases with facts that closely approximated the facts in the hypothetical. As a result, it does not appear that the Osuna court considered the Bland court’s observation that it is “immaterial” whether the defendant is present when the authorities find the weapon. (Bland, supra, 10 Cal.4th at p. 1000.) Even so, the Osuna hypothetical is inapt.[13] Here, defendant left his cell briefly to take a shower. When he left the cell, his possession was continuing. Moments *1354 before he went to the shower, he was in his cell and in either constructive or actual possession of the weapon. At a minimum, the weapon was readily accessible to him at that time and thus it was readily accessible during his possession of the weapon. Additionally, the showers are located ‘“[r]ight in the middle of the . . . tier,” with five cells to each side of each shower. Unlike the hypothetical parolee described in Osuna who was not home (Osuna, supra, 225 Cal.App.4th at p. 1030), defendant here was ‘“home.” He was simply in another part of his home, mere cell widths away from his cell taking a shower. And defendant would undoubtedly be returning to his cell directly following his shower. Had the correctional officers not discovered the weapon, it would have been readily accessible to him immediately upon his return from the showers.
Defendant’s circumstances here are more analogous to those of the defendant in People v. Elder (2014) 227 Cal.App.4th 1308 [174 Cal.Rptr.3d 795] (Elder). In Elder, a law enforcement task force executing a search warrant found the defendant outside the front door of his apartment. (Id. at p. 1317.) Inside the apartment, law enforcement found a gun on an entertainment center and another gun in an unlocked safe in the bedroom. (Ibid.) The Elder *1355 court concluded that the trial court properly determined that the defendant was ineligible for resentencing because he was armed with a firearm. {Ibid.)[14]
In addition to Elder, defendant’s circumstances here are similar to each of the following: the defendant in Bland who was in the police vehicle while the weapon and drugs were discovered inside of his house; the defendant in Delgadillo who was detained on a freeway while drugs and a firearm were found during the execution of a search warrant at his home; the defendant in Hicks who was detained outside the apartment he was there to visit, inside of which his backpack containing a gun was found; and the defendant who was detained by the police officer at the motel in T. White while the gun was found in a garbage can in an upstairs corridor where the defendant had been. In each of these cases, the weapon was not discovered on the defendant’s person or in his immediate presence and the authorities never saw the defendant in actual possession of the weapon. Yet, there was sufficient evidence to reasonably infer that, at some point during the defendant’s possession of the weapon, he was present with it and that it was readily accessible to him for his immediate use.
Defendant asserts he could not be armed because, in addition to being away from his cell, he was “under guard and possibly handcuffed” when the weapon was found. Thus, according to defendant, the weapon was not readily available for offensive or defensive use. But this was the case in each of the cases we have just mentioned. Those defendants were also detained or in custody at the time the weapons were found. We conclude defendant’s supervised visit to the shower did not make him eligible for sentence reduction under the Act. The arming exception still disqualifies him. Where, as here, the possessory offense is ongoing and defendant had the weapon available for use earlier, the arming exception makes him ineligible for resentencing under the Act. To conclude otherwise would mean that before he went to the shower, defendant was ineligible for sentence reduction; while he was in the shower, he was eligible for sentence reduction; and when he returned from the shower (had the weapon not been discovered), he was again ineligible for sentence reduction. It is difficult to accept the premise that it was the intent of the electorate to make defendant eligible or ineligible for sentence reduction depending on the fortuity of the weapon being found while he was taking a shower.
Nor should his eligibility turn on the fact that inmates in administrative segregation were not allowed to roam the cell block freely. Defendant’s *1356 eligibility for Proposition 36 relief cannot conceivably turn on the fact that he was housed in administrative segregation and, therefore, because he was escorted to the shower rather than being free to enter and exit his cell with greater autonomy, he was not deemed to have had the weapon available for use. This analysis would lead to an absurd result: an inmate housed elsewhere in the prison, with the ability to enter and exit his cell more freely and to take showers with lesser supervision would be ineligible for Proposition 36 relief if a weapon were found in his cell while he was nearby taking a shower or elsewhere in the cellblock, but defendant would be eligible for relief because, due to the greater danger he posed to other inmates and corrections officers, he had to be restrained whenever he left his cell.
The dissent suggests the analysis in a Bland situation involving the possession of a weapon with drugs should be different than the analysis employed in a case involving a possession of a weapon charge. (Dis. opn. of Duarte, J., post, at p. 1359.) According to the dissent, ‘“[t]he key moment in time as well as in physical location for the ‘armed’ classification in the drug cases is the discovery of the drugs,” and the result would be different if the weapon had been stored away from the drugs at the time when the drugs were discovered. (Ibid.) We do not disagree. As we have noted, armed in the commission of a drug offense requires both a facilitative nexus as well as a temporal nexus. (Hicks, supra, 231 Cal.App.4th at pp. 283-284.) Consequently, if the firearm is stored away from the drugs, a facilitative nexus could not be established based solely on the concurrent possession of the weapon and drugs. But as Bland teaches, the defendant need not be present when the drugs and weapon are found to be deemed armed. (Bland, supra, 10 Cal.4th at p. 1000.) Moreover, in a weapon possession case where arming requires that the weapon be available for a defendant’s use during the commission of the weapon possession, only a temporal nexus is required and that nexus has nothing to do with where the defendant was located when the weapon was discovered. The temporal nexus is the concurrence of the point in time when the defendant has possession of the weapon and it is available for use. Thus, the key point in time for purposes of determining whether a defendant will be deemed to have been “armed” in a case involving constructive possession is whatever point in time the defendant had constructive possession of the weapon and it was simultaneously available for use.
The dissent suggests that under our analysis, a defendant is “forever armed,” but this temporal focus misses the mark. If a person commits a crime today and is not apprehended until some future point in time, that person is still subject to prosecution for the crime when he is apprehended (assuming charges are filed within the statute of limitations). That person is no less culpable for the offense just because he was not caught in the act and arrested at the time and place where the crime was committed. Similarly, where, as here, a defendant constructively possessed a weapon and simultaneously had *1357 it available for use offensively or defensively, he was armed at that point in time, and it does not matter that he was later detained in some place other than where the arming had previously taken place. He still had the weapon available for use at the earlier point in time. Thus, if he is charged with possession alleged to have taken place at that earlier time and convicted, he may also be deemed armed at that earlier time for purposes of the arming exception, rendering him ineligible for resentencing under the Act.[15]
In our view, the conclusion we reach here is consistent with the voters’ intent in enacting Proposition 36. The arguments expressed in support of Proposition 36 “reflect[ed] an intent to ‘make the punishment fit the crime’ and ‘make room in prison for dangerous felons.’ ” (Johnson, supra, 61 Cal.4th at p. 686, quoting Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52, italics added.) “In this same vein, the ballot materials related to Proposition 36 (and therefore the resentencing statute) reflect an intent to ‘ “keep violent felons off the street” ’ and ‘ “prevent[] dangerous criminals from being released early.” ’ ” (People v. Caraballo (2016) 246 Cal.App.4th 936, 940 [201 Cal.Rptr.3d 233], italics added, quoting Johnson, at p. 686.) These aims would not be served by an interpretation of the statute requiring the narrow temporal focus of arming advanced by defendant, a focus that would make him eligible for sentence reduction simply because he was not present with the weapon when it was found, even though he had been present with it and it had been available for his use earlier. “[T]he plain purpose of these disqualifying factors is to serve as a prophylactic measure to further the goal of the Three Strikes law to protect society against recidivist criminals who commit violent and/or serious crimes. In enacting Proposition 36, the voters intended a third strike defendant who committed a current, nonviolent and nonserious crime would not be punished as severely as a third strike defendant whose current crime was violent and/or serious. Nonetheless, the voters also intended to exclude those defendants who committed the current nonviolent and nonserious crime in a manner that potentially could result in violent and/or serious consequences, which intent is manifest in the triad of disqualifying factors. As the court cogently reasoned in [Blakely; supra, 225 Cal.App.4th 1042]: ‘It is clear the electorate’s intent was not to throw open the prison doors for all third strike offenders whose current convictions were not for serious or violent felonies, but only for those who were perceived as nondangerous or posing little or no risk to the public.’ ” (Newman, supra, 2 Cal.App.5th at pp. 724-725, first & third italics added, review granted.) Felons in possession of weapons and who have them readily available for use at any time during the possession are obviously dangerous, particularly in a custodial setting. We see nothing in the statute, the ballot arguments, or any other source that suggests the voters *1358 intended dangerous felons to be eligible for sentence reduction if they were lucky enough to be arrested or detained at a location where they could not easily put their hands on the weapon, even though they had it available for use at some earlier point in time during their possession of it.
Based on the foregoing, we conclude that substantial evidence supported the trial court’s determination that defendant was armed with a deadly weapon within the meaning of sections 667, subd. (e)(2)(C)(iii), and 1170.12, subd. (c)(2)(C)(iii), and that he was thus ineligible for resentencing on this conviction.
C. Assault by Inmate by Means Likely to Cause Great Bodily Injury (§ 4501)*
DISPOSITION
The order appealed from is affirmed.
Hull, Acting P. J., concurred.

 Further undesignated statutory references are to the Penal Code in effect at the relevant times.

 The factual background relating to defendant’s underlying convictions is derived from this court’s unpublished opinion affirming the judgment. (Valdez, supra, C038924; see People v. Guilford (2014) 228 Cal.App.4th 651, 660-661 [175 Cal.Rptr.3d 640] (Guilford) [prior appellate opinion admissible to prove ineligibility in § 1170.126 proceedings].) Defendant moved to augment the record on appeal to include the entire record in his appeal from the underlying convictions and we treated that motion as a motion to incorporate by reference that record and granted the motion. Defendant relies upon facts from testimony in the trial transcript in his appellate briefing. Although defendant did not present the transcript from his trial to the trial court in connection with his petition for resentencing, we have considered the cited testimony as well as other testimony in the trial transcript as if he had. (See People v. Blakely (2014) 225 Cal.App.4th 1042, 1063 [171 Cal.Rptr.3d 70] (Blakely) [the trial court may examine relevant, reliable, admissible portions of the record of conviction to determine the existence or nonexistence of disqualifying factors].) We discuss the other testimony from the trial transcript in our discussion, post.

 In People v. Johnson (2015) 61 Cal.4th 674 [189 Cal.Rptr.3d 794, 352 P.3d 366] (Johnson), decided after the trial court’s determination here, our high court concluded that “the Act requires an inmate’s eligibility for resentencing ... be evaluated on a count-by-count basis,” and that “resentencing is allowed with respect to a count that is neither serious nor violent, despite the presence of another count that is serious or violent.” (Johnson, at pp. 679, 688, 695.) Thus, our high court rejected the approach adopted by the trial court here that a single ineligible conviction rendered the defendant ineligible for resentencing under the Act on other convictions. In any event, as we discuss post, Johnson is of no moment because defendant is ineligible for resentencing on both convictions.

See footnote, ante, page 1338.

 Section 4502, subdivision (a), provides in pertinent part: “Every person who, while at or confined in any penal institution, while being conveyed to or from any penal institution, or while under the custody of officials, officers, or employees of any penal institution, possesses ... [a] sharp instrument ... is guilty of a felony ...."’

 Specifically, the defendant in T. White contended his case was distinguishable from M. White, supra. 223 Cal.App.4th 512, where the officers saw the defendant carrying rolled up sweat pants with an object inside. After the defendant threw these items into the back of his pickup truck, the officers recovered them and discovered the object in the sweat pants was a handgun. (M. White, at p. 520.)

 The dissent comments that “at some unwitnessed point in time [defendant] was presumably in the cell with the weapon.” (Italics added.) In our view, this is not a matter subject to speculation and we need not presume this fact. The jury convicted defendant of possession of the weapon found in his cell while he was taking a shower, and this court rejected his claim of insufficient evidence of possession in his appeal from that conviction. (Valdez, supra. C038924.)

 This dictum was recently repeated in another case involving actual possession of a firearm by a felon. (People v. Frutoz (2017) 8 Cal.App.5th 171, 177 [213 Cal.Rptr.3d 473].)

 We are aware that other courts have stated that mere possession of a weapon does not establish that the defendant was armed with the weapon because possession can be constructive as well as actual. (See People v. Burnes (2015) 242 Cal.App.4th 1452, 1458 [195 Cal.Rptr.3d 903], citing Blakely, supra. 225 Cal.App.4th at p. 1057.) In M. White, supra. 223 Cal.App.4th 512, the court stated, “while the act of being armed with a firearm—that is, having ready access to a firearm [citation]—necessarily requires possession of the firearm, possession *1354 of a firearm does not necessarily require that the possessor be armed with it.” (Id. at p. 524.) The M. White court posed a hypothetical example in dicta similar to the one in Osuna to illustrate its perception of when a person in constructive possession of a weapon would not be aimed: “For example, a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not aimed with it.” (M. White, at p. 524.) None of these cases actually involved the specific situation where the defendant was not seen with the weapon and was not present when the weapon was discovered. Indeed, in Burnes. the issue before the com! related to the improper use of a probation report to determine the circumstances of the defendant’s possession, not the sufficiency of evidence establishing arming. (Burnes. at p. 1455.) No other source of facts establishing the underlying circumstances of the defendant’s possession was considered by the trial court in Burnes. In Blakely, supra. 225 Cal.App.4th 1042, the defendant actually fired the weapon and admitted actual possession of it for purposes of self-defense (id. at p. 1049), so not only was he excluded under the aiming exception but also the personal use exception. In M. White, the defendant was also in actual physical possession of the weapon. (M. White, at pp. 524-525; see fn. 10, ante.) Constructive possession was not a theory of possession in these cases. More importantly, like Osuna, these courts did not consider our high court’s observation in Bland that the defendant need not be present when the weapon is found so long as the evidence demonstrates he or she had the weapon available for use “at any time during [the] possession of the drugs.” (Bland, supra. 10 Cal.4th at p. 1000, italics added.) In light of our high court’s reasoning in Bland, the fact that a defendant is only in constructive possession as opposed to actual possession at the time the weapon is discovered does not mean he or she did not have the weapon available for use at some earlier point dining the possession of that weapon. Having said that, we do not disagree that there could be scenarios where a person is in knowing constructive possession of a weapon, yet was never near it or even touched it so as to be deemed aimed, e.g., where a third person places a weapon in a place over which the defendant has dominion and control, tells the defendant it is at that location, but the weapon is discovered before the defendant could go to that location.

 However, in light of Bland. Delgadillo. Hicks, and T. White, we do not agree with the Elder court’s seemingly inconsistent suggestion that a person could not be denied sentence reduction under the “armed” exception where the weapon “is under a defendant’s dominion and control in a location not readily accessible to him at the time of its discovery.” (Elder, supra. 227 Cal.App.4th at pp. 1313-1314, italics added.)

 Defendant was charged with possession of the weapon “[o]n or about December 7, 1998,” the same day when he left his cell to shower and the weapon was discovered.

See footnote, ante, page 1338.