Filed 8/16/22 P. v. Barnes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN KENNETH BARNES,<br><br>        Defendant and Appellant. | C093243<br><br>(Super. Ct. No. 20FE004323) |

A jury convicted defendant Steven Kenneth Barnes on two counts of assault with a firearm (counts two and three), being a felon in possession of a firearm (count four), being a felon in possession of ammunition (count five), possession of heroin and cocaine for sale (count six), and possession of heroin and cocaine while armed with a loaded, operable firearm (count seven).  The jury found true allegations that in committing the count two crime, defendant personally used a firearm and personally inflicted great bodily injury.  It also found true an allegation that in committing the count six crime, defendant was personally armed with a firearm.  The trial court sentenced defendant to an aggregate prison term of 26 years.

1

Defendant now contends (1) the jury's true finding on the count six firearm enhancement is not supported by sufficient evidence; (2) there is insufficient evidence to support the count seven conviction for possession of heroin and cocaine while armed with a loaded, operable firearm; (3) the trial court should have struck the prior serious felony conviction allegation under Penal Code section 1385[1]; (4) the trial court erred in imposing a four-year middle term for the count six firearm enhancement; and (5) the count three sentence for assault with a firearm should have been stayed under section 654.

Regarding defendant's fourth contention that the trial court erred in imposing a four-year middle term for the count six firearm enhancement, the Attorney General agrees, and we do too. Section 1170.1 required the trial court to impose one-third the middle term on the section 12022, subdivision (c) enhancement. Defendant's other contentions lack merit. We will modify the judgment to impose a sentence of one year four months on the count six firearm enhancement and affirm the judgment as modified.

## BACKGROUND

A man named Jarius met a prostitute named Jenny online and arranged to meet at Jenny's apartment. Shortly after Jarius arrived at the apartment, defendant called Jenny. Defendant lived in an apartment near Jenny and defendant and Jenny had been in a romantic relationship for over 10 years.

Defendant told Jenny he was outside her apartment door and to open the door. Jenny told Jarius to stay in her bedroom. She allowed defendant into the apartment, thinking she could get rid of him. But when defendant did not appear to believe her statement that no one was in her apartment, Jenny told Jarius to come out of the bedroom.

---

[1] Undesignated statutory references are to the Penal Code.

Defendant had a gun, which Jarius described as a black semiautomatic pistol. Defendant pointed the gun at Jarius's face and told Jarius not to look at him. Jarius testified that defendant hit him on the back of the head with the gun, but Jarius did not sustain any injuries to the back of his head. Jenny said defendant hit Jarius with his hand; she was not sure if the same hand was holding the gun.

Defendant ordered Jarius to get on the ground and stomped on Jarius's shoulder, back, and head. Jarius said defendant tried to get into Jarius's pants pockets, where Jarius had his wallet, car key, and cell phone. Jenny testified that defendant did not reach for Jarius's pockets. Neither defendant nor Jenny asked for Jarius's car key, wallet, or cell phone.

Jarius did not have any weapons on him. He testified he kept his hands in his pants pockets to prevent defendant and Jenny from taking his property and neither Jenny nor defendant put a hand inside his pants pocket. Jenny asked Jarius, "What are you reaching for?" She patted down both of Jarius's legs because she thought he had a gun. But she never saw a gun on Jarius and did not feel anything consistent with a gun or knife on him.

Defendant and Jarius struggled on the ground and Jarius got to his knees. Defendant stood in front of Jarius, said "goodbye," and shot Jarius in his left arm. Defendant ran out of the apartment.

Jarius ran outside to his car but his car key was not in his pants pocket. He still had his wallet and cell phone. He called 911 and said he left his car key in the apartment but also that he had been robbed.

Jarius provided inconsistent statements to law enforcement officers. He told one officer he was hit in the face with the gun and told another he was hit on the back of the head with the gun. He told an officer his car key fell out of his pocket during a struggle and told another officer he did not know if his key was taken from him.

SWAT officers took defendant into custody. In defendant's apartment, detectives found a loaded silver revolver in a container next to the bed. The revolver was operable, and the serial number had been removed. Numerous live bullets that would fit in the revolver were found in the bedroom closet. Cocaine and heroin were found in baggies or small containers on the kitchen table. About 30 bindles of suspected black tar heroin were found in a tackle box in the kitchen. The People's narcotics expert opined that heroin and cocaine in the quantities involved and as packaged would be possessed for sale and not personal use.

Jarius's car key was found under the area rug in Jenny's living room. There was a slug from a semiautomatic pistol near the car key. The slug was not fired from the silver revolver found in defendant's apartment.

Defendant admitted that on January 4, 2000, he was convicted of carjacking (§ 215, subd. (a)) with a firearm use enhancement (§ 12022.5, subd. (a)) in Alameda County, that the offense was a serious felony under section 1192.7, subdivision (c), and that he came within the provisions of the three strikes law.

The jury acquitted defendant of attempted robbery (§§ 664/211—count one), but convicted him on two counts of assault with a firearm (§ 245, subd, (a)(2)—counts two and three), being a felon in possession of a firearm (§ 29800, subd. (a)(1)—count four), being a felon in possession of ammunition (§ 30305, subd. (a)(1)—count five), possession of heroin and cocaine for sale (Health & Saf. Code, § 11351—count six), and possession of heroin and cocaine while armed with a loaded, operable firearm (Health & Saf. Code § 11370.1, subd. (a)—count seven). The jury found true the allegation that in committing the count two crime, defendant personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury upon Jarius (§ 12022.7, subd. (a)). It also found true the allegation that in committing the count six crime, defendant was personally armed with a firearm (§ 12022, subd. (c)). The jury found not true the allegation that in committing the count three crime, defendant personally used a firearm as a bludgeoning

4

instrument (§ 12022.5, subds. (a), (d)).  The trial court sentenced defendant to an aggregate prison term of 26 years.

DISCUSSION

I

Defendant challenges the sufficiency of the evidence supporting the jury's true finding on the section 12022, subdivision (c) firearm enhancement on the count six conviction, i.e., that he was personally armed with a firearm in the commission of possessing heroin and cocaine for sale.

In determining whether sufficient evidence supports a conviction, "we do not determine the facts ourselves.  Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.] [¶] . . . '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)  We do not reweigh evidence.  (*Ibid.*)  This standard also applies to insufficient evidence claims involving circumstantial evidence.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)  " 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*Ibid.*)  The effect of this standard of review is that a defendant challenging the sufficiency of the evidence to support his or her conviction bears a heavy burden on appeal.  (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1287.)

The Dangerous Weapons' Control Law (§ 12000 et seq.), of which section 12022 is a part, was enacted " '[t]o deter persons from creating a potential for death or injury that results from the very presence of a firearm at the scene of a crime.' " (*People v.*

5

*Bland* (1995) 10 Cal.4th 991, 996, 1006 (*Bland*).) "Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used." (*People v. Mendival* (1992) 2 Cal.App.4th 562, 573.) Consequently, a defendant is "armed" within the meaning of section 12022 and is subject to enhanced punishment if he or she has a firearm available for use, either offensively or defensively, to further the commission of the underlying felony. (*Bland,* at pp. 997-999.)

Section 12022, subdivision (c) subjects a person who is personally armed with a firearm in the commission of a violation of Health and Safety Code section 11351 to additional penalties. The term "armed" in subdivisions (a) and (c) has been interpreted identically. (*People v. Delgadillo* (2005) 132 Cal.App.4th 1570, 1574 (*Delgadillo*); see *People v. Pitto* (2008) 43 Cal.4th 228, 231, 240.) To be personally armed, the defendant must actually commit the prohibited conduct—i.e., carry the firearm or have it available for offensive or defensive use—as opposed to being vicariously liable for the conduct of another. (*Bland, supra*, 10 Cal.4th at p. 998, fn. 3; *People v. Smith* (1992) 9 Cal.App.4th 196, 204, 207, fn. 21; see *People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1013.) Personally armed does not require the defendant to use or carry the firearm. (*Smith,* at p. 204.)

In *Bland*, law enforcement officers found rock cocaine, a scale, and plastic baggies in the defendant's bedroom closet and unloaded firearms, including an assault rifle, under his bed. (*Bland, supra*, 10 Cal.4th at pp. 995, 1003.) Defendant was in a police car outside the house at the time of the search. (*Id.* at p. 995.) The jury convicted defendant of possession of cocaine base for sale and found true a section 12022, subdivision (a) allegation of being armed with an assault weapon. (*Bland,* at pp. 995-996.) The issue was whether defendant was armed within the meaning of section 12022, subdivision (a) when he was not present when the police seized the cocaine base and firearms. (*Bland,* at p. 995.)

The California Supreme Court held that "[w]hen the prosecution has proved a charge of felony drug possession, and the evidence at trial shows that a firearm was found in close proximity to the illegal drugs in a place frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession [which is a continuing crime], the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession. These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was 'armed with a firearm in the commission' of a felony within the meaning of section 12022." (*Bland, supra*, 10 Cal.4th at pp. 999, 1001-1003.) It was immaterial whether the defendant was present when police seized the firearms and cocaine base. (*Id.* at p. 1000.)

In *Delgadillo,* the defendant was convicted of manufacturing methamphetamine and the jury found true a section 12022, subdivision (c) enhancement. (*Delgadillo, supra*, 132 Cal.App.4th at p. 1572.) The operation in which the defendant was involved included multiple locations. (*Id.* at p. 1574-1575.) Cash proceeds and firearms were kept at the defendant's house, raw material and lab equipment were kept in vehicles parked in front of the house, the lab was located at a different location, and other equipment and the finished product were stored in a yet another location. (*Id.* at p. 1575.) The appellate court held that sufficient evidence supported the jury's true finding on the section 12022, subdivision (c) allegation because the firearms found in the defendant's bedroom were in close proximity to the cars outside the defendant's house, in which the defendant and his cohorts stored lab equipment and raw material for their operation, and the firearms were available to the defendant to use at any time during the manufacturing process. (*Delgadillo,* at p. 1575; see *People v. Bradford* (1995) 38 Cal.App.4th 1733, 1736-1739.)

7

Defendant contends there was no evidence he had firearms available to him and ready for his use in the commission of the crime of drug possession at the time of his arrest because police confronted him outside his apartment and no officer saw defendant inside the apartment. But defendant need not be present when the police discovered the revolver and narcotics inside his apartment in order for him to be armed within the meaning of section 12022. (*Bland, supra*, 10 Cal.4th at pp. 995, 1000-1004.)

SWAT officers called defendant out of apartment No. 5. Jenny testified that defendant lived alone in that apartment. Detectives found a loaded revolver in a container next to the bed in the master bedroom. Heroin and cocaine, in small plastic containers or baggies, were found in the kitchen. Defendant does not challenge his conviction on count six for possession of heroin and cocaine for sale. Drug possession is a continuing offense. (*Bland, supra*, 10 Cal.4th at p. 999.) Based on evidence that defendant was physically present with the heroin, cocaine and revolver, and that the loaded revolver was kept next to defendant's bed, the jury could reasonably find the revolver was readily available to defendant to aid his commission of the drug offense. (*Id.* at pp. 1000, 1003-1004; *Delgadillo, supra*, 132 Cal.App.4th at pp. 1574-1575.)

Nevertheless, citing *People v. Sanchez* (2021) 66 Cal.App.5th 14 and *People v. Balbuena* (1992) 11 Cal.App.4th 1136, defendant argues no rational trier of fact could find beyond a reasonable doubt that the revolver was available for immediate use in the commission of the drug possession offense because the revolver and narcotics were in separate rooms. In *Sanchez*, the court held a firearm was not available for immediate use because defendant had methamphetamine with him in the cab of a pickup truck but the loaded rifle was in a bag under a board in the bed of the truck. (*Sanchez,* at p. 16.) And in *Balbuena*, a firearm was not available for immediate use because drugs were found among clothing in one suitcase while an unloaded pistol was found among clothing in another latched but not locked suitcase. (*Balbuena,* at p. 1138.)

Here, although defendant's revolver was in a container and the drugs were in another room, the revolver was loaded and there was evidence someone "could grab it fast." Under the circumstances, we decline to say the jury could not reasonably infer that defendant knew of the firearm's presence, that its presence together with the drugs was not accidental or coincidental, and that, at some point during the period of illegal drug possession, defendant was present with both the drugs and the firearm and thus that the firearm was available for defendant to put to immediate use to aid in the drug possession. (*Bland, supra*, 10 Cal.4th at pp. 999, 1001-1003.) Those reasonable inferences are sufficient to support the firearm enhancement. (*Ibid.*)

II

Defendant also challenges the sufficiency of the evidence supporting the count seven conviction for possession of heroin and cocaine while armed with a loaded, operable firearm.

Health & Safety Code section 11370.1, subdivision (a) defines "armed with" as "having available for immediate offensive or defensive use." (Health & Saf. Code, § 11370.1, subd. (a).) The definition is consistent with the interpretation of "armed" in section 12022. (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979, 990 (*Martinez*), disapproved on another ground in *People v. Montellano* (2019) 39 Cal.App.5th 148, 155-156; accord *Bland, supra*, 10 Cal.4th at p. 995.) A defendant need not carry a firearm on his or her person to be armed under Health and Safety Code section 11370.1. (*Martinez,* at p. 990.)

In *People v. Williams* (2009) 170 Cal.App.4th 587, the appellate court found sufficient evidence supporting the defendant's conviction for violating Health and Safety Code section 11370.1 where a loaded firearm was found under a pillow about a foot away from the computer the defendant had been using. (*Williams,* at pp. 595, 624.) Methamphetamine and another loaded firearm were found in the garage, 10 or 15 feet from the defendant's room. (*Id.* at p. 624.) In *Martinez,* the defendant was disqualified

9

from resentencing under Proposition 36, the Three Strikes Reform Act of 2012 (as approved by voters, Gen. Elec. (Nov. 6, 2012), because he had a firearm available for immediate offensive or defensive use during the commission of the underlying offense. (*Martinez, supra*, 225 Cal.App.4th at pp. 992-993.) Law enforcement officers found the defendant in the kitchen with a bindle of heroin and a shotgun was either in the same room or in one of the bedrooms, and other firearms were found in a closet in the residence. (*Id.* at pp. 984-985, 995.)

Defendant contends there was no evidence he had immediate access to the revolver because no officer testified to his presence inside the apartment at any time. But for the reasons we have explained, we decline to hold that the jury could not reasonably find from the evidence that the loaded revolver found next to defendant's bed was available for defendant's immediate use.

### III

Defendant further argues the trial court abused its discretion in declining to dismiss a 20-year-old prior serious felony conviction allegation under section 1385.

On its own motion and in furtherance of justice pursuant to section 1385, a trial court may dismiss an allegation or finding under the three strikes law that the defendant was previously convicted of a serious and/or violent felony. (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*); *People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*); *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504.) There is a strong presumption that a sentence that conforms with the sentencing norm is proper, dismissal of a strike is a departure from the three strikes sentencing norm, and a court must follow stringent standards to depart from the norm. (*Carmony,* at pp. 377-378.) In ruling on a motion to strike an allegation or finding that a defendant has previously been convicted of a serious and/or violent felony, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the

10

defendant may be deemed outside the [three strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 377.)

We review the trial court's section 1385 ruling under the deferential abuse of discretion standard. (*Carmony, supra*, 33 Cal.4th at pp. 373-376; *Williams, supra*, 17 Cal.4th at p. 162.) We presume the trial court's section 1385 ruling is proper. (*Carmony,* at pp. 376-378.) The party attacking the sentence bears the burden of clearly showing that the trial court's ruling is unreasonable in light of the applicable law and the relevant facts. (*Id.* at p. 376; *Williams,* at p. 162.) Where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Carmony,* at p. 378.) We do not substitute our judgment for that of the trial court and will not reverse the trial court's sentencing decision merely because reasonable people might disagree. (*Id.* at pp. 377-378.)

Here, the record shows the trial court was aware of its discretion under section 1385, and considered the factors set forth in *Carmony*. Defendant notes that the trial court incorrectly indicated that defendant hit Jarius in the head with the gun and that it looked like defendant tried to kill Jarius, and correctly asserts that a trial court may not consider improper factors in declining to dismiss a strike allegation. But the *totality* of the trial court's reasons establishes the trial court did not abuse its discretion.

Defendant was a felon who possessed two firearms and ammunition. He was armed with a loaded black semiautomatic pistol when he entered Jenny's apartment. He also had a loaded silver revolver and ammunition in his apartment. In addition, he possessed cocaine and heroin for sale. Jarius testified that defendant pointed a gun at Jarius's face and ordered Jarius to get on the ground. Although the jury did not find true the allegation that defendant bludgeoned Jarius with the semiautomatic pistol, there was

11

uncontroverted evidence that defendant hit and kicked Jarius. Defendant also shot Jarius after telling him "goodbye."

With regard to his prior strike conviction, defendant admitted that on January 4, 2000, in Alameda County, he was convicted of carjacking, he personally used a firearm in the commission of that crime, and the conviction constituted a serious felony under the three strikes law. Defendant was 25 years old at the time of that offense. About two years before the conduct underlying his 2000 conviction, defendant was convicted of possession of cocaine base for sale (Health & Saf. Code, § 11351.5), served three days in county jail, and was granted three years of probation. "[O]lder strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways . . . ." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1107.) Defendant did not do so.

As for his background, character and prospects, defendant's family submitted letters supporting defendant and it appeared defendant was a loving father. He was granted a certificate of rehabilitation under section 4852.13 in 2015 for his carjacking and drug possession offenses. However, as the trial court found, in the present 2020 offenses, he again committed crimes involving firearms and possession of narcotics for sale. Defendant began using cocaine in 2015 or 2016 but never participated in a substance abuse treatment program or drug counseling. The trial court said it appeared defendant had not learned anything. In addition, defendant was unemployed starting in October 2018 and stopped providing financial support for his minor children. He had no reported source of income. Moreover, evidence at the trial showed that defendant had previously hit and threatened to kill Jenny, with whom he had a long-term romantic relationship. He broke out a window in her apartment and kicked in her front door on previous occasions. His conduct in the present offenses was consistent with that violent history.

Considering all the circumstances, the trial court did not abuse its discretion in declining to strike the prior serious felony allegation under section 1385.

12

## IV

In addition, defendant contends the trial court erred in imposing a four-year middle term for the section 12022, subdivision (c) enhancement on count six.

The trial court designated count two as the principal term. On count six, it imposed one-third the middle term and doubled that prison term because of the prior strike. It then imposed the middle term of four years for the section 12022, subdivision (c) firearm enhancement.

Defendant asserts section 1170.1 required the trial court to impose one-third of the middle term on the section 12022, subdivision (c) enhancement. He is correct and the Attorney General properly agrees. (§ 1170.1.) We will modify the judgment to strike the four-year sentence on the section 12022, subdivision (c) enhancement on count six and substitute in its place a sentence of one year four months in prison, which is one-third the middle term of four years. (§ 12022, subd. (c).)

## V

Defendant next argues the trial court should have stayed the sentence on the count three conviction for assault with a firearm under section 654 because he acted with a single objective in committing the two assaults and the two assaults constituted a single indivisible transaction.

Section 654 protects against multiple punishment where the same act or omission or " 'a course of conduct deemed to be indivisible in time' " results in multiple statutory violations. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) Whether a course of conduct is divisible and therefore gives rise to more than one act or omission within the meaning of section 654 depends on the defendant's intent and objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 637.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and may be punished only once. [Citation] [¶] If, on the other hand, [the] defendant harbored 'multiple criminal

13

objectives,' which were independent of and not merely incidental to each other, he [or she] may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Harrison,* at p. 335.)

The California Supreme Court has found multiple punishment permissible where the defendant had the same objective but committed separate acts (e.g., *Harrison, supra*, 48 Cal.3d at pp. 335-338; cf. *People v.Beamon, supra*, 8 Cal.3d at pp. 639-640) and when the defendant had separate objectives (e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162-163). The trial court must stay execution of the sentence on convictions for which multiple punishment is prohibited under section 654. (*People v. Correa* (2012) 54 Cal.4th 331, 337.)

We will not reverse the trial court's determination if there is substantial evidence to support it. (*People v. Brents* (2012) 53 Cal.4th 599, 1148.) We review the trial court's determination in the light most favorable to the judgment and presume the existence of every fact the trial court could reasonably deduce from the evidence. (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

Counts two and three charged defendant with committing an assault on Jarius with a firearm in violation of section 245, subdivision (a)(2). Assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. (§ 240.) Pointing a gun at a victim is sufficient to establish an assault with a firearm. (*People v. Raviart* (2001) 93 Cal.App.4th 258, 266; *People v. Laya* (1954) 123 Cal.App.2d 7, 16.) Actual physical contact with the victim is not necessary to commit an assault. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)

Substantial evidence supports the trial court's finding that the count three act of assault (hitting Jarius) was separate from the count two act of assault (pointing and shooting the gun at Jarius) and that section 654 did not apply. Jarius testified that defendant hit him on the back of the head with the gun; Jenny said defendant hit Jarius

with his hand. The two then struggled on the ground, defendant got up, pointed the gun at Jarius, said goodbye, and shot him. Viewing the evidence in the light most favorable to the People, the trial court could reasonably find from the evidence that defendant committed separate acts. Defendant could have stopped his assaultive behavior but chose not to do so. (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368.) The trial court could also have reasonably concluded that defendant harbored separate objectives that were independent of and not merely incidental to each other. (*Ibid.*)

DISPOSITION

The judgment is modified to strike the four-year term for the section 12022, subdivision (c) enhancement on count six and in its place to impose an enhancement term of one year four months, for a total aggregate prison term of 23 years four months. The judgment is affirmed as modified. The trial court shall prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.


/S/
MAURO, J.


We concur:


/S/
ROBIE, Acting P. J.


/S/
HOCH, J.


15